511 P.2d 658

**ADAMS TREE SERVICE, INC., an Arizona corporation, Appellant,**

v.

**TRANSAMERICA TITLE INSURANCE COMPANY of Arizona, an Arizona corporation, as Trustee under Trust No. 95482, New Pueblo Constructors, Inc., an Arizona corporation, United States Fidelity & Guaranty, as surety on Bond No. 22668–13–3686–66 and Bond No. 22668–13–3556–67, Arizona Title Insurance and Trust Company, an Arizona corporation as Trustee under Trust No. 3770, et al., Appellees.**

**No. 2 CA–CIV 1350.**

Court of Appeals of Arizona, Division 2.

June 29, 1973.

Rehearing Denied July 30, 1973.

Review Denied Sept. 25, 1973.

Scott & Bret Harte, by Lawrence K. Bret Harte and Michael J. Vingelli, Tucson, for appellant.

Robertson, Molloy, Fickett & Jones, P. C. by J. Michael McClanahan and Michael J. Meehan, Tucson, for appellees.

KRUCKER, Judge.

This appeal involves the validity of a mechanics' lien filed by the appellant against the following real property of appellees:

> "Those portions of Sections 24, 25, and 26, T–14–South, R–12–East, Pima County, Arizona, G. & S. R. B. & M., more particularly described as Tucson Estates Unit 6 Golf Course and Unit 6 Lots 1 through 634 and Block 4 according to the records in the office of the County Recorder of Pima County, Arizona."

This property is commonly known as Tucson Estates, Inc., Unit 6, and was owned by Transamerica Title Insurance Co. of Arizona as trustee under Trust No. 95482 and Arizona Title Insurance and Trust Co. as trustee under another trust. Appellant Adams Tree Service Inc. provided labor and materials as subcontractor under appellee New Pueblo Constructors Inc. The work accomplished by appellant consisted of a golf course, specifically on bid items 26, 27 and 29 of the principal contract between New Pueblo and the owners. A dispute arose between appellant and New Pueblo and appellant filed a notice and claim of lien against Tucson Estates Unit 6 on November 1, 1971. Tucson Estates is a mobile home subdivision located in Pima County, Arizona, providing sites for mobile home living.

A complaint to foreclose the mechanics' lien was filed on March 30, 1972. Appellees moved for summary judgment based on the issue of the validity of the mechanics' lien and appellant filed a cross motion for summary judgment on the same issue.

The trial court denied appellant's motion for summary judgment and granted appellees' motion for partial summary judgment declaring the mechanics' lien invalid insofar as it pertained to Tucson Estates Inc. Unit 6 Lots 1 through 634 and Block 4. It allowed the parties to bring the matter be-

fore the court for further ruling as to the validity of the remainder of the lien. On November 17, 1972, the court granted appellees' motion for summary judgment and declared the mechanics' lien invalid in its entirety.

This appeal presents two questions for our consideration:

1. Does A.R.S. § 33–983 allow a claimant to lien more real property than labored upon when the labor and materials improve or benefit contiguous real property?

2. Are the valid portions of a lien severable from the invalid portions when the lien includes more real property than the claimant is entitled by statute to claim?

## AMOUNT OF LIENABLE LAND

Appellant contends that A.R.S. § 33–983, subsec. A, as amended, allows it a lien on Lots 1 through 634 and Block 4 in Unit 6 in addition to a lien on the golf course to which it directly supplied labor and materials. The basis for its contention is that the additional land was "improved" by the development of the golf course and, since the land is "contiguous" to the golf course, it may also be subject to the lien.

We must first determine the statute applicable to this particular situation. Arizona has three lien statutes which may provide relief to one who has furnished labor or materials to real property: A.R.S. § 33–981 for labor or materials used in construction, alteration or repair of structures;[1] A.R.S. § 33–983, as amended, for improvements to city lots or other land;[2] and A.R.S. § 33–987 for waterways, highways, excavations or land (including the leveling of land).[3]

In the instant case, since the improvement consisted of landscaping, A.R.S. § 33–981 obviously does not apply because it relates to buildings or other structures.

1. A.R.S. § 33–981 states:

"A. Every person who labors or furnishes materials, machinery, fixtures or tools in the construction, alteration or repair of any building, or other structure or improvement whatever, shall have a lien thereon for the work or labor done or materials, machinery, fixtures or tools furnished, whether the work was done or articles furnished at the instance of the owner of the building, structure or improvement, or his agent.

B. Every contractor, sub-contractor, architect, builder or other person having charge or control of the construction, alteration or repair, either wholly or in part, of any building, structure or improvement, is the agent of the owner for the purposes of this article, and the owner shall be liable for the reasonable value of labor or materials furnished to his agent.

2. A.R.S. § 33–983, as amended, states:

"A. A person who furnishes material or labors upon a lot in an incorporated city or town, or any parcel of land not exceeding one hundred sixty acres in the aggregate, or fills in or otherwise improves the lot or such parcel of land, or a street, alley or proposed street or alley, within, in front of or adjoining the lot or parcel of land at the instance of the owner of the lot or parcel of land, shall have a lien on the lot or parcel of contiguous land not exceeding one hundred sixty acres in the aggregate, and the buildings, structures and improvements thereon for material furnished and labor performed.

"B. Every contractor, subcontractor, architect, builder, subdivider or other person having charge or control of the improvement or work on any such lot or parcel of land, either wholly or in part, is the agent of the owner for the purposes of this section, and the owner shall be liable for the reasonable value of labor or material furnished at the instance of such agent, upon a lot or parcel of land as hereinabove defined, or any street, alley or proposed street or alley, within, in front of or adjoining such lot or parcel of land."

3. A.R.S. § 33–987 states:

"A person who labors or furnishes labor or materials in the construction, alteration or repair of any canal, water ditch, flume, aqueduct or reservoir, bridge, fence, road, highway, cellar, excavation or other structure or improvement, or in the clearing, ditching, bordering or leveling of land, and to whom wages or monies are due or owing therefore, shall have a lien upon such property for all amounts due and unpaid. Materials includes the use of mules, horses, machinery or equipment used in or about such projects."

Although A.R.S. § 33–987 allows a lien for excavation, the development of a golf course through landscaping involves more than excavating.[4] Hence, we are left with A.R.S. § 33–983, as amended, as the applicable lien statute.

Determining the amount of land that may be liened is difficult. As has been noted in an Arizona Law Review article,[5] there are apparent inconsistencies in the lien statutes which can cause considerable confusion in choosing the appropriate statute for the circumstances.

In the instant case there appears to be a conflict between A.R.S. § 33–983, as amended, supra, and A.R.S. § 33–991.[6] Under the former, a total of 160 acres of land may be liened while under the latter only 10 acres may be liened, even though *both* may apply to land outside a subdivision or an incorporated town or city, i. e., rural land.

It was suggested in the Arizona Law Review article, supra, and this seems to be a correct interpretation, that A.R.S. § 33–991 relates back only to A.R.S. § 33–981 by limiting the amount of *land* that may be liened in addition to the A.R.S. § 33–981 *structures* that may be liened. Other states often define the amount of lienable land surrounding the structure which has received the labor and materials as such space "as may be required for the convenient use and occupation thereof." Or. Rev.Stat. § 87.015 (1953); Idaho Code § 45–505; Calif.Code of Civ.Proc. § 1183.1, Arizona apparently instead chose to place a flat limit of ten acres on the amount of lienable land. If we did not say that A.R.S. § 33–991 relates back to A.R.S. § 33–981, a person desiring to lien rural land would be forced to choose between A.R.S. § 33–991 and A.R.S. § 33–981. To say that he could choose the maximum that the law allows is not persuasive because the statute allowing the lesser amount would in effect be inoperative. This would violate the rule of construction that a statute must be construed as a whole with effect being given to all provisions if possible. Street v. Commercial Credit Co., 35 Ariz. 479, 281 P. 46 (1929); Hill v. County of Gila, 56 Ariz. 317, 107 P.2d 377 (1940).

In addition, a statute should be construed so as to render it a harmonious and consistent whole if different portions seem to conflict. Hill v. County of Gila, supra. By holding that A.R.S. § 33–991, as amended, relates only to A.R.S. § 33–981, and that A.R.S. § 33–983, as amended, applies whenever labor or materials are supplied to something other than a structure or building, all provisions are operative and the inconsistency dissolves.

The next problem to resolve is the amount of land in the instant case that may be liened under A.R.S. § 33–983, as amended. The answer turns on the meaning of the word "parcel" as it is used in the statute. As defined in 31 Words and

---

4. [o] Excavation refers to digging a hole in the ground or uncovering land. Landscaping means to change the natural features of land to make it more attractive, as by planting lawns, trees, bushes, etc. *See*, Webster's New World Dictionary (College Ed. 1962).

5. Townsdin, "The Mechanics' Lien in Arizona: Is It a Practical Remedy?" 7 Ariz.L.Rev. 296 (1966).

6. A.R.S. § 33–991, as amended, states:
   "A. If the land upon which an improvement is made and labor has been performed lies outside of the limits of the recorded map or plat of a townsite, an incorporated city or town, or a subdivision, the lien shall extend to and include not to ex-
   ceed ten acres of the land upon which the improvement is made and the labor has been performed.
   "B. If the land on which an improvement is made or labor has been performed lies within the limits of a recorded map or plat of a townsite, an incorporated city or town, or a subdivision, the lien shall extend to and include only the particular lot or lots upon which the improvement is made and the labor has been performed.
   C. If the labor is performed or the improvements made upon a mining claim, the lien shall extend to the whole thereof and to the group of which the claim upon which the work was done is a part if the group is operated as one property."

Phrases at page 81, a "parcel of land" means:

". . . contiguous quantity of land in possession of, owned by, or recorded as property of the same claimant, person or company. . . ." (Citation omitted)

The definition includes the concept of ownership by one person or entity. Appellant claims that the ownership by the same beneficial owner, Tucson Estates, Inc., allows the lien to extend to all the property liened. However, we must look to the entire statutory scheme to determine the meaning of "parcel" under A.R.S. § 33–983, as amended.

Under A.R.S. § 33–991, subsec. B, as amended, a person who performs work on land within a subdivision may have a lien on only "the lot or lots upon which the improvement is made or the labor has been performed." However, this section relates back to A.R.S. § 33–981 dealing solely with buildings. If a person performs work on a lot in a subdivision that does not involve a building or structure, he must look to A. R.S. § 33–983, as amended, for relief. There we find that he may lien up to 160 acres if the entire subdivision is viewed as one parcel. This seems inconsistent with the intent of the legislature to limit the amount of land liened to boundaries related to the area on which the work is directly performed, i. e., a lot. Thus, viewing a subdivision as a large tract divided into individual lots or parcels is more reasonable.

■ Tucson Estates, Inc. recorded its plat of the subdivision containing Lots 1 through 634 and Block 4 with the Pima County Recorder. A subdivision consists of a large tract of land divided into smaller lots or parcels. *See,* A.R.S. § 32–2101, as amended; *see also,* McKain v. Toledo City Plan Commission, 26 Ohio App.2d 171, 270 N.E.2d 370 (1971).

■ In the instant case, according to the above definitions there are 636 parcels of land: the golf course, Lots 1 through 634 and Block 4. A.R.S. § 33–983, as amended, refers to a "parcel of contiguous land" in the singular. The only parcel here which received material and labor was the golf course. Hence, it is the only land which can validly be liened.

■ Appellees claim that appellant was never entitled to file a lien on any property because it waived its statutory right in the agreement with the contractor, New Pueblo Constructors. The pertinent section of appellant's contract with New Pueblo reads:

*"Section 16. Additional Requirements:* The Subcontractor further specifically obligates himself to the Contractor in the following respects, to wit. . . . (g) that he shall assume toward the Contractor all the obligations and responsibilities that the Contractor assumes toward the Owner, as set forth in the Principal Contract, General and Special Conditions, Drawings, Specifications and other documents hereinabove referred to, *insofar as applicable, generally or specifically, to the materials to be furnished, the work to be performed and the responsibilities to be assumed under this Subcontract."* (Emphasis added)

Appellees contend that by virtue of the above language, appellant bound itself to the following obligations in the primary contract between New Pueblo and the Owner:

"Contractor shall keep Owner's property free from liens arising hereunder. Prior to final payment, Contractor shall furnish waiver of liens or such other evidence of compliance herewith as Owner may require."

There is nothing in the language of the subcontract above to indicate that appellant adopted *all* the provisions of the primary contract. It merely obligated itself as to the materials and labor which the contractor agreed to furnish to the owner. Furthermore, the following language in § 16 of the same subcontract appears to indicate non-waiver of appellant's lien:

\*  \*  \*  \*  \*  \*

"(d) that he [subcontractor] shall pay for all materials furnished and work and

labor performed under this Subcontract, and to satisfy the Contractor thereupon whenever demand is made, and indemnify the Contractor and the Owner against and save them and the premises harmless from any and all claims, suits, or liens therefor, *by others than the Subcontractor.* . . ." (Emphasis added)

We hold, therefore, that appellees' "waiver" argument fails.

■ Appellees also contend that appellant failed to perfect its lien pursuant to A.R.S. § 33–993, as amended:

". . . The notice and claim of lien shall be made under oath by the claimant . . . and shall contain:

1. A description of the lands and improvements to be charged with a lien, sufficient for identification. . . ."

Although appellant did include too much land in its description of the liened property, it cannot be said that inclusion of such excess constitutes a description that is not "sufficient for identification."

## SEVERABILITY

■ Appellant contends that the valid portion of its lien on the golf course can be severed from the invalid portion on the subdivision lots. With this we agree. The general rule followed in some jurisdictions, and which we now adopt, is stated in 52 A.L.R.2d 12 § 21, and cases cited therein:

". . . [T]he inclusion of more land than that to which the lien may properly attach does not vitiate the lien upon so much of the land as is encompassed within the description and to which a lien may properly attach, at least if the description is not fraudulent or grossly misleading and innocent third parties are not affected."

One particular case illustrates the point well. In Brown et al. v. Turnage Hardware Co., Inc., 181 Ark. 606, 26 S.W.2d 1114 (1930), the claimant had liened 360 acres, believing under the applicable statute he was authorized to do so. Since he was allowed to lien only one acre, however, the lien was held valid as to that acre and invalid as to the remaining land.

Appellees claim that appellant conducted itself in bad faith by (1) refusing to sign two quitclaim deeds to Unit 6, Lots 1 through 634 and Block 4 when its mistake in liening those excessive amounts of land was pointed out to it by appellees' attorney, and (2) stating that it would not release the lien because it felt it could apply pressure to New Pueblo by casting a cloud on the title to the subject property. (An affidavit of an attorney for one of the appellees recited that this statement was made to him by Adams' attorney.)

We do not believe that this conduct constitutes bad faith. As noted above, the Arizona lien statutes are confusing and difficult to understand. A person cannot be charged with acting in bad faith when he refuses to relinquish a lien right to which he believes he is entitled under statute. Also, the comment referred to in the attorney's affidavit is merely a statement of the purpose of the lien laws, namely, to provide security for the payment of a debt by casting a cloud on the title to the owner's land. Roy F. Stamm Electric Co. v. Hamilton-Brown Shoe Co., 350 Mo. 1178, 171 S.W.2d 580 (1943); 57 C.J.S. Mechanics' Liens § 3; cf., Kerr-McGee Oil Industries, Inc. v. McCray, 89 Ariz. 307, 361 P.2d 734 (1961) (laborers and materialmen enhancing the value of another's property should be protected).

In the instant case the parcel of land on which appellant placed improvements is easily distinguishable from the remaining liened land. The copy of the subdivision plat for Lots 1 through 634 and Block 4 which was recorded by Tucson Estates, Inc., does not indicate that the golf course is part of the subdivision. Even if the golf course were part of the subdivision, it can be differentiated from the subdivision by the nature of the use to which it is put. Cf., Bambrick Bros. Construction Co. v. Semple Place Realty Co., 270 Mo. 450, 193 S.W. 543 (1917). Furthermore, appel-

lees have already demonstrated the ease with which the golf course can be separated from the subdivision by their request to appellant for quitclaim deeds only to Lots 1 through 634 and Block 4 as a satisfactory resolution to the problem created by the excessive lien. We hold, thereofre, that the valid lien on the golf course is severable from the invalid portion on the remaining land.

For the foregoing reasons, the summary judgment in favor of appellees is reversed and the cause remanded for further proceedings not inconsistent herewith.

HATHAWAY, C. J., and HOWARD, J., concur.