## ROOSE v PARKLANE HOMES CORPORATION

1. Vendor and Purchaser—Contracts—Land Contracts—Subdivision Control Act—Undivided Tracts—Individual Lots—Installment Payments.

   A contract for the sale of land is not voidable under or governed by the Subdivision Control Act where the agreement is to purchase an undivided tract of land larger than ten acres, but described by proposed subdivision lots, which after platting and recording is to be divided and released by the seller to the buyer in the proposed individual lots of less than ten acres upon receipt of principal payments established in the contract where no plat of the subdivision was recorded at the time of the contract for sale (MCLA 560.101 *et seq.*).

2. Vendor and Purchaser—Contracts—Land Contracts—Subdivision Control Act—Voidability—Cure.

   A contract for the sale of land which is improper in its inception and voidable under the Subdivision Control Act is voidable only up to the time that the defect is cured by the recording of the plat where no harm has accrued to the purchaser (MCLA 560.101 *et seq.*).

3. Vendor and Purchaser—Contracts—Land Contracts—Subdivision Control Act—Purchaser Participation—Rescission.

   The courts will not assist a purchaser under a land contract in extricating himself from his obligations and declare the contract void by invoking the Subdivision Control Act where the purchaser has assisted the seller in platting, recording and conveying the parcels of land and where he obviously did not seek rescission until it became apparent that he had made a bad deal (MCLA 560.101 *et seq.*).

Appeal from Wayne, Victor J. Baum, J. Submitted Division 1 January 7, 1975, at Detroit. (Docket No. 19961.) Decided March 12, 1975. Leave to appeal denied, 394 Mich 786.

Reference for Points in Headnotes
[1–3] 77 Am Jur 2d, Vendor and Purchaser §§ 88, 90, 92–94.

Complaint by Joseph L. Roose against Parklane Homes Corporation seeking rescission of a land contract. Summary judgment for plaintiff. Defendant appeals. Reversed and remanded.

*Sempliner, Thomas & Guth,* for plaintiff.

*Maile & Leach* (by *Randall Winston),* for defendant.

Before: QUINN, P. J., and BASHARA and R. M. MAHER, JJ.

BASHARA, J. This appeal is brought by defendant-seller from a summary judgment in favor of plaintiff-purchaser ordering rescission of a land contract.

Plaintiff and defendant entered into a land contract on November 21, 1972 for the sale of certain unplatted land in Plymouth Township. The property is described in the contract of sale as:

"Lots 1 through 13 and 19 through 24, of the *proposed* Parklane Subdivision in the S.W. 1/4 Section 35, T.1.S., R. 8E." (Emphasis supplied.)

Each of the described parcels is ten acres or less.

A rider attached to the contract provides in pertinent part:

"This Rider is attached to and made a part of a certain Land Contract dated 11-21-72 by and between Parklane Homes Corp., a Michigan corporation, as Seller and Joseph L. Roose as Purchaser, covering nineteen lots in the proposed Parklane Ravine Subdivision.

"The Seller agrees to proceed without delay with the platting of the land, and to secure the recording of the plat as soon as may be, and the Purchaser agrees to

join in the execution of such plat upon request of Seller (without cost to the Purchaser).

"The Purchaser agrees to pay an additional principal payment of Ten Thousand & no/100 ($10,000.00) Dollars upon being furnished a copy of the recorded plat.

"After the recording of the plat, Seller agrees to release individual lots and convey the same to the Purchaser upon Purchaser's request and upon payment by the Purchaser to the Seller of the sum of Eight Thousand Seven Hundred & no/100 ($8,700.00) Dollars to be applied on principal reduction in this contract for each lot so released, and the Purchaser agrees to secure the release and conveyance of not less than nine (9) of such lots and to pay on principal reduction not less than Seventy-Eight Thousand Three Hundred & no/100 ($78,300.00) Dollars within one (1) year from and after date of this contract."

In accordance with the rider defendant had the plat approved, and it was recorded in the Wayne County Register of Deeds office on June 1, 1973. Plaintiff joined as a "proprietor"[1] of the accepted plat and thereafter paid an additional principal payment of $10,000 to defendant in accordance with the contract.

Subsequently, plaintiff paid $8,700 to defendant on two separate occasions as he sold two of the lots and received a warranty deed for the lots from defendant. This was done in accordance with paragraph four of the rider above quoted.

On or about November 23, 1973, plaintiff notified defendant that he intended to rescind the contract because it was voidable under the Subdivision Control Act, 1967 PA 288; MCLA 560.101 *et seq.;* MSA 26.430[101] *et seq.*[2] Defendant refused

---

[1] MCLA 560.102(h); MSA 26.430(102)(h) defines "proprietor" as a natural person holding any ownership in land whether recorded or not.

[2] Plaintiff specifically relies on MCLA 560.267; MSA 26.430(267) which provides: "Any sale of lands subdivided in violation of the

to comply with plaintiff's request, resulting in this suit for rescission. Both parties filed motions for summary judgment. The trial court found that defendant had violated the Subdivision Control Act and also rejected defendant's argument that plaintiff had waived his statutory right to rescission.

Defendant first contends that no subdivision existed at the time of sale and that the transaction does not, therefore, fall within the ambit of the Subdivision Control Act. "Subdivision" for the purposes of the act is defined in section 102[3] as follows:

" 'Subdivide' or 'subdivision' means the partitioning or dividing of a parcel or tract of land by the proprietor thereof or by his heirs, executors, administrators, legal representatives, successors or assigns for the purpose of sale, or lease of more than one year, or of building development, where the act of division creates 5 or more parcels of land each of which is 10 acres or less in area; or 5 or more parcels of land each of which is 10 acres or less in area are created by successive divisions within a period of 10 years."

Does the fact that the land being sold was described as numbered lots according to a proposed plat mean that "subdivision" occurred at the time the land contract was executed within the meaning of the above statutory reference? Under the facts present we believe that a subdivision was not in existence at the time of execution of the contract.

---

provisions of this act shall be voidable at the option of the purchaser thereof, and shall subject the seller thereof to the forfeiture of any and all consideration received or pledged therefor, together with any damages sustained by said purchaser thereof, recoverable in an action at law."

[3] MCLA 560.102(d); MSA 26.430(102)(d)

Under the terms of the rider no partition into lots was contemplated by the parties until after platting and recording. It was only after recording that specific lots were sold and plaintiff paid defendant for those specific lots. The words of the rider, "[a]fter the recording of the plat, Seller agrees to release individual lots and convey the same to the Purchaser * * * ", can be interpreted only to mean that "subdivision" was to occur after platting and recording.

Defendant also contends that even if the contract was improper in its inception, the fact that the property was subsequently platted and recorded prevents plaintiff from later rescinding under the Subdivision Control Act.

We speak to the second issue raised by defendant only because of the paucity of decisional direction interpreting this specialized area of the law.

Plaintiff argues, and the trial court held, that the case of *Taunt v Moegle,* 344 Mich 683; 75 NW2d 48 (1956) was directly controlling. We disagree because the facts distinguish that holding from the matter at bar. In *Taunt, supra,* the statutory violation had never been remedied at the time of the attempted rescission. No plat was ever approved or recorded, and an access highway to plaintiff's property shown on the proposed plat was never constructed. The plaintiffs were effectively land-locked from access to their property.

When the Legislature enacted both the present and preceding Subdivision Control Acts, one intended purpose was to protect persons who purchased lots on proposed but unplatted (and unrecorded) parcels of land. The danger, as manifested in *Taunt v Moegle, supra* was that an innocent purchaser could purchase land without having any access to it.

Assuming, arguendo, that a subdivision existed in the instant case at the moment of execution of the contract, we would hold that the contract is voidable only up to the time that the defect is cured. Once the plat was recorded, the statutory violation ceased to exist. By providing the word "voidable" instead of "void" in section 267 of the act, the Legislature could not have intended that the option to void a contract remains after a defect is cured where no harm has accrued to the purchaser.

Finally, we must note that throughout the rider to the contract, cooperation between the seller and purchaser in platting, recording, and selling the parcels of land becomes obvious. It is undisputed that plaintiff and defendant jointly recorded the subject plat on June 1, 1973. Plaintiff did not seek rescission until November of 1973. We cannot avoid the impression that plaintiff felt that he had made a bad deal and is now seeking to extricate himself from it. We do not believe, given the facts here, that the courts should assist in this endeavor.

Based on the foregoing opinion, this cause is remanded to the trial court for the purpose of setting aside the summary judgment on behalf of plaintiff and entering summary judgment in favor of defendant.

Reversed and remanded for proceedings consistent with this opinion. Costs to defendant.