328 So.2d 175 (1975)
William H. HENDERSON
v.
ZONING APPEALS BOARD OF JEFFERSON PARISH.
No. 6494.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1975.
Rehearing March 16, 1976.
Writ Refused May 11, 1976.
*176 Mmahat, Gagliano, Duffy & Giordano, Metairie (Nicholas J. Gagliano), Metairile, for plaintiff-appellant.
Bruce D. Burglass, Parish Atty., Robert I. Broussard, Asst. Parish Atty., for defendant-appellee, Zoning Appeals Board of Jefferson Parish.
McDonald, Buchler & Morel, Harold A. Buchler, Metairie, for intervenor-appellee, Metairie Country Club.
Before REDMANN, LEMMON, GULOTTA, BOUTALL and SCHOTT, JJ.
Concurring Opinion In Denial of Rehearing March 16, 1976.
LEMMON, Judge.
Plaintiff has appealed from a judgment dismissing his suit which questioned the legality of the issuance of a building permit by the Jefferson Parish Safety Department to Metairie Country Club, authorizing the construction of five tennis courts on that portion of the Club's property adjoining plaintiff's residence.
There are presently three tennis courts on the Club's property, the nearest located between 40 and 90 feet on an angle away *177 from plaintiff's property line.[1] The proposed construction, involving relocation of these courts and construction of two additional courts, will expand the tennis area to within a few feet of plaintiff's property line, at a point near plaintiff's frontage on Nassau Drive. The construction will also extend the tennis facilities in the other direction into an existing parking lot located between the present courts and the club house. Twelve parking spaces will be removed from the present parking lot and ten parking spaces will be added in the area adjacent to plaintiff's property line.[2]
The issues on appeal involve interpretations of the Jefferson Parish Comprehensive Zoning Ordinance. Plaintiff contends that under the zoning ordinance the proposed expansion requires prior approval by ordinance of the Jefferson Parish Council and that the permit was illegally issued without such approval.
The Club's property is located in an R-1 Single Family Residential District and has been used as a club since 1926.
Under the zoning ordinance originally adopted in 1958, "clubs" were listed as a permitted use in R-3 Multiple Family Residential Districts.[3] The zoning ordinance was amended, however, after the decision by this court in Howlett v. Lakeside Country Club, 198 So.2d 402 (La.App.4th Cir. 1967), in which property owners opposed construction of a clubhouse, swimming pool and tennis courts in an R-1 district. The court held that use of the property for that purpose was permitted in R-1 districts as a private recreational use under Subsection 2 H of Section VII.[4]
After the Howlett decision the Jefferson Parish Council amended Subsection 2 (listing permitted uses in R-1 districts) by adding Subparagraph C1 as follows:
"C1. Clubs when approved by an ordinance by the Jefferson Parish Council when the Council is satisfied that granting approval will not seriously affect any adjoining property or the general welfare and further, that the Planning Department and the Planning Advisory Board hold public hearings and make recommendations to the Council and that all property owners within 100' fronting on both sides of the street of such location, shall be notified by certified mail and the entire area shall be posted calling the attention of the public hearing for this purpose."
When Subparagraph C1 was added, however, Subparagraph H was left unchanged.

I
Plaintiff contends that the proposed expansion constitutes an intended use of property as a club in an R-1 district, which is not permitted without council approval after a public hearing in accordance with Section VII 2 C1.
Use of property for nonprofit clubs or for private recreational facilities perhaps fulfills social and recreational needs of a *178 neighborhood, municipality or metropolitan area, but such use also tends to produce traffic, noise and activity which may not be compatible with the enjoyment of property in a purely residential district.
Many zoning ordinances have approached the problem as to nonprofit clubs either by limiting clubs to only the less restrictive residential zones (as the Jefferson ordinance originally did), or by permitting clubs in the more restrictive districts only through special permit procedures requiring review of the proposed use and approval by a board or by the governing authority (as the Jefferson ordinance now does). See generally 2 Anderson, American Law of Zoning § 9.43 (1968).
As to private recreational uses, many zoning ordinances also require special permit procedures before allowing use of property for tennis courts, swimming pools and golf courses in residential districts. 2 Anderson, American Law of Zoning § 15.06, 11.84 (1968). However, when the Jefferson Parish governing authority amended Section VII of the zoning ordinance by adding Subsection 2 C1 to permit use of property for clubs in R-1 districts only after a public hearing and an approving ordinance, the Council did not amend Subsection 2 H, which still allows private recreational uses in R-1 districts without an approving ordinance.[5]
The Metairie Country Club is seeking to use a portion of R-1 zoned property for a private recreational use as a tennis court. We hold that since Section VII 2 H of the zoning ordinance by its express terms permits this particular use in R-1 districts, Council approval for use as a club under Section VII 2 C1 is not required.[6]
We recognize that there is some inconsistency in the zoning ordinance which requires Council approval before using property in R-1 districts as a club, while permitting use of such property for a private recreational use such as a tennis court.[7] Nevertheless, even if the zoning ordinance is ambiguous in that one section permits a proposed use and another section prohibits such use until a special permit is obtained, the ordinance must be strictly construed in favor of the landowner, since zoning ordinances are in derogation of the rights of private ownership. State ex rel. Time Saver Stores v. Bd. of Zoning Adjustments, 261 So.2d 273 (La.App.4th Cir. 1972).
The zoning ordinance in the present case restricts the use of property to those uses specifically listed in the ordinance. Since the proposed use for private recreational purposes is one which is listed in that section governing permitted use of property zoned R-1, we must conclude that the proposed use is legal without Council approval.

II
Plaintiff also urges consideration of Subsection 2A of Section XIX, pertaining to nonconforming uses, which provides that "(a)dditions will be permitted to a *179 structure which enjoys a legal non-conforming use only by passage of an ordinance by the Jefferson Parish Council".
Our decision that the proposed use of the property for private recreational purposes does not constitute nonconforming use is dispositive of this contention. Since the proposed construction is specifically permitted in R-1 districts under Subsection 2H of Section VII, it is not necessary for Metairie Country Club to follow procedures specified for additions to nonconforming structures.[8]

III
Subsection 2 of Section XVIII, pertaining to off-street parking regulations, provides:
"OFF STREET PARKING REQUIREMENTS:
Off street automobile parking space shall be provided on any lot which any of the following listed uses are hereafter established, and in accordance with the schedule shown. When a use is increased in capacity by the addition of dwelling rooms, guest rooms, floor area or streets, the minimum off street parking shall be provided for such increase.
"USE
* * * * * * * * * * *
"7. Clubs and Lodges
1 Space for each 3 members at time of construction or structural alteration."
Contending that the proposed construction constitutes a structural alteration, plaintiff argues Metairie Country Club with a membership in excess of 1,000 must increase its present 165 parking spaces to comply with the ordinance, and that the building permit should not have been issued until there was a showing that the parking requirements would be met.
Most modern zoning ordinances undertake to prevent further deterioration of parking situations by requiring that plans for new construction or the substantial alteration of an existing building include specific provisions for off-street parking. 2 Anderson, American Law of Zoning § 8.40 (1968). However, Jefferson Parish's ordinance's off-street parking requirements by their express terms apply only "on any lot (on) which any of the following listed uses are hereafter established". (Emphasis supplied) Even accepting plaintiff's argument that the proposed construction merely expands the existing overall use of the property as a club, we again point out that the permit involved here is not one to establish a new club.[9] Therefore, the off-street parking requirements are expressly inapplicable under the circumstances present in this case.
Furthermore, viewing the proposed construction as a private recreational use, we *180 note that the zoning ordinance expressly allowing such use in R-1 districts necessarily allows the construction of "back stops" or high fences to prevent balls from going on neighboring property.
Finally, the circumstances of this case do not present a situation where "a use is increased in capacity by the addition of dwelling rooms, guest rooms, floor area or seats" so as to require provision of minimum off-street parking for such increase.

IV
Section XVIII 1 C provides:
"Area reserved for off street parking or loading in accordance with the provisions of this section shall not be reduced in area or changed to any other use unless the permitted use which it serves is discontinued or modified except where equivalent off street parking or loading space is provided." (Emphasis supplied)
Plaintiff argues that the exhibits demonstrate a reduction in the area presently used for off-street parking and that there has not been a sufficient showing that the proposed construction provides equivalent off-street parking space.
The ordinance's off-street parking requirement for clubs is set in terms of parking spaces. The exhibits in the record indicate that 17 new parking spaces will be provided to replace the 12 parking spaces to be lost in the proposed construction. On the basis of this showing, we find no error in the issuance of the permit because parking area was reduced.
The judgment is affirmed.
Affirmed.
GULOTTA, J., dissents and assigns reasons.
SCHOTT, J., dissents and assigns reasons.
GULOTTA, Judge (dissenting).
I disagree with the conclusion reached by the majority that the property is not a non-conforming use. The Howlett case, and the majority's interpretation of Section VII(2)(C1) notwithstanding, I am of the opinion that the Metairie Country Club occupies the position of a non-conforming use. Section X(2)(G) of the ordinance permits "Clubs and Lodges" in "Multiple Family Residential DistrictR-3". A club is defined under Section III(18) as follows:
"Buildings and facilities owned and operated by a corporation, association, person or persons for a social, educational or recreational purpose, but not primarily for profit or to render a service which is normally carried on as a business."
As pointed out by the majority, the club has been in operation since 1926. The ordinance was adopted in 1958. If we adopt the view that (2)(C1) of Section VII applies to establishing a new club, as determined by the majority, a club in existence at the time of the adoption of the ordinance would be permitted under R-3 (Section X(2)(G)). When located in an R-1 area, as in the instant case, it enjoys the status of legal non-conforming use.
Metairie Country Club seeks to relocate tennis courts and construct two additional ones. Section XIX(2A) of the ordinance defines addition as follows:
"Additions will be permitted to a structure which enjoys a legal non-conforming use only by the passage of an ordinance by the Jefferson Parish Council, . . ."(italics ours)
Section III(70) defines structure as follows:
"Anything constructed or erected, the use of which requires a location on the ground, or attached to something having a location on the ground, including but without the generality of the foregoing, *181 advertising signs, billboards,back stops for tennis courts, fences and pergolas." (italics ours)
It seems rather clear to me that the proposed construction of additional tennis courts is an addition to a structure of legal non-conforming use property requiring the"passage of an ordinance" by the Jefferson Parish Council. I am of the opinion that because no such ordinance was adopted, the permit issued by the Jefferson Parish Safety Department is not valid. Accordingly, I dissent.
SCHOTT, Judge (dissenting).
Section XVIII 2. entitled "Offstreet Parking Requirements" prescribes as follows:
"Offstreet automobile parking space shall be provided on any lot which any of the following listed uses are hereafter established, and in accordance with the schedule shown. . . .
"USE
* * * * * *
"7. Clubs and Lodges
1 Space for each 3 members at time of construction or structural alteration." (Emphasis supplied)
Section III of the Ordinance defines"structural alteration" as "any change in the supporting members of a structure" and defines "structure" to include "backstops for tennis courts [and] fences."
The Club proposes to relocate the existing three tennis courts and to construct two additional courts. This work will involve the removal of the present fences or backstops and the construction of newfences or backstops. From the plain wording of the ordinance this constitutes a structural alteration which cannot be accomplished without providing one space for each three members of the Club.
In the majority opinion the subject provision is said to be inapplicable because the club pre-existed the ordinance which speaks of uses "hereafter established." I submit this interpretation stifles the ability of the parish to cope with parking problems. It is understood that a pre-existing use as a club can continue as long as its original size and character remain unchanged without regard to subsequently adopted parking requirements, but there is no basis for holding that the use's pre-existence entitles the owner to expand its operations with attendant increase in parking demands notwithstanding the parish's efforts in the meantime to cope with parking problems. In my opinion, the use "hereafter established" is not the existence of the club but the "structural alteration" of its facilities which cannot be accomplished without compliance with the off street parking requirements.
Therefore, I believe that the permit was issued by the Parish Safety Department in violation of the ordinance and the judgment of the trial court should be reversed.
I respectfully dissent.
LEMMON, Judge (concurring in the denial of application for rehearing).
On application for rehearing, plaintiff contends that this court in Howlett v. Lakeside Country Club, supra, wrongly applied Section VII 2 H to permit construction of a club house, swimming pool and tennis court as a private recreational use by a club. Citing 2 Anderson, American Law of Zoning, § 12.11, pp. 502-503 (1968), plaintiff asserts that "golf course", for example, has a different meaning from "golf club", and suggests that Subsection 2 H permits the golf course to be located in an R-1 district, while the club house and other such facilities must be restricted to adjacent R-3 districts.
I tend to agree with this interpretation and would probably have voted in Howlett *182 to prohibit construction of the club house in the R-1 district.[1] In the present case, however, Metairie Country Club is simply seeking to construct tennis courts in an R-1 district, adjacent to its club house, and is not seeking to construct a club house or similar facility in that district. Construction of a "tennis court" (as opposed to a "tennis club") is specifically permitted by Subsection 2 H.[2]
The true solution to the problem raised in this case is for the Jefferson Parish Council (if that body is so inclined) to amend Subsection 2 H to allow private recreational uses in R-1 districts only through special permit procedures, as was done when Subsection 2 C1 was adopted. This solution in the future, however, cannot avail plaintiff in this suit, which is controlled by the present ordinance.
I further agree with plaintiff's contention that Subsection 2 H (as it now reads) is inconsistent with Section VII's purpose clause.[3] Nevertheless, Subsection 2 H is in the ordinance and must be given effect. Amendment of the ordinance is the appropriate method of achieving consistency.
As to parking requirements, problems are inherent in requirements based upon the number of employees or number of members at time of establishment of the use, since such numbers are often increased without an increase in building, floor area, or seating. However, the zoning ordinance could (but does not) require additional parking to be provided when the number of employees or members is increased, just as the ordinance requires additional parking to be provided when the floor area is increased.
NOTES
[1] With the Club's permission plaintiff planted and now maintains trees in this "buffer" area.
[2] The plan also shows the addition of seven new parking spaces on the other side of the clubhouse.
[3] Clubs are defined in the zoning ordinance as:

"Buildings and facilities owned and operated by a corporation, association, person or persons for a social, educational or recreational purpose, but not primarily for profit or to render a service which is normally carried on as a business."
[4] Section VII 2 H provided:

"2. PERMITTED USESIn R-1 Districts only the following uses of property shall be permitted:
* * * * * *
"H. Private recreational uses such as tennis courts, swimming pools, golf courses, operated exclusively for private use and not for commercial purposes."
[5] In this context private recreational use is not limited to use, for example, as a back yard swimming pool by an individual and members of his family and guests. The illustrative inclusion of "golf courses" and the connotation of the word "operated" clearly indicate that the drafters of the zoning ordinance envisioned this private recreational use to include such use by a private, noncommercial association of individuals.
[6] The landowner on the other side of plaintiff's residence could apparently obtain a building permit to construct a tennis court for private recreational use by a noncommercial association of individuals under the authority of Section VII 2 H, without Council approval.
[7] In any event we differentiate between the procedure to establish a new club (not involved in this case) under Subsection 2 C1 and the procedure to establish a private recreational use under Subsection 2 H.
[8] We further note that Metairie Country Club's use of its property as a club was never a nonconforming use, either under prior law as expressed in the Howlett case or under the new law (Section VII 2 C1) which specifically permits the existence of clubs (although a proposed new use for this purpose must be approved by ordinance).
[9] Although subject to other interpretations, Section XVIII 2 can reasonably be interpreted to apply only when the property was previously unused or was used for other purposes, as when a new club is being established on vacant ground, required parking spaces would be calculated based on membership at time of construction, and when a new club is being established on property previously used for another purpose, required parking spaces would be calculated based on membership at time of structural alteration.
[1] I certainly disagree with the implication in Howlett that the construction was permitted as a "community center . . . used exclusively by the Federal, State or local government for public purposes . . . ."
[2] On the basis of similar reasoning I probably would have voted to allow construction of the "tennis court" in Shady Grove, Inc. v. Parish of Jefferson, 203 So.2d 869 (La.App.4th Cir. 1967).
[3] That is, I cannot find a way to construe Subsection 2 H so that it would be consistent with the purpose clause.