613 P.2d 425

**STATE of New Mexico ex rel., Toney ANAYA, Attorney General, Plaintiff-Appellee,**

v.

**SELECT WESTERN LANDS, INC., a New Mexico Corporation, Defendant-Appellant.**

**No. 3890.**

Court of Appeals of New Mexico.

Dec. 20, 1979.

Writ of Certiorari Quashed May 15, 1980.

Fred M. Standley, Robert Suzenski, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Joseph F. Canepa, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Earl W. Potter, Santa Fe, amicus curiae.

## OPINION

WALTERS, Judge.

Defendant, Select Western Lands, Inc., appeals district court convictions after a de novo hearing on defendant's appeal from magistrate court, on eighteen charges of violating the County Subdivision Act. (§§ 47–6–1, et seq., N.M.S.A.1978). The trial court, sitting without a jury, imposed the maximum fine of $1,000 on each of the eighteen counts. Seven other counts were dismissed either in the magistrate or district court proceedings because of statute of limitation defenses.

In 1969 Select Western acquired 3,400 acres of land near Cerrillos known as the Gene West Ranch. During 1975 and 1976, without preparing or filing a plat map, or otherwise adhering to the Subdivision Act, defendant sold forty separate parcels to forty separate purchasers. Most parcels were approximately forty acres in size.

The portions of the Act pertinent to this appeal are as follows:

§ 47–6–2(G):

"subdivide" means to divide the surface area of land into a subdivision;

§ 47–6–2(H):

"subdivider" means any person creating a subdivision, or any person engaged in the sale or lease of subdivided land which is being sold or leased by the owner in the ordinary course of business;

§ 47–6–2(I):

"subdivision" means an area of land within New Mexico, the surface of which has been divided by a subdivider into five or more parcels for the purpose of sale or lease. Subdivision does not include:

(1) any land retained by the subdivider after subdivision but which has not been divided for a subdivision;

.    .    .    .    .

§ 47–6–2(N):

"type-four subdivision" means any subdivision containing twenty-five or more parcels, each of which is ten acres or more in size; and

§ 47–6–2(O):

"type-five subdivision" means any subdivision containing not less than five parcels and not more than twenty-four parcels, each of which is ten acres or more in size.

§ 47–6–3. Subdivision; description

Any person desiring to subdivide land shall have a plat of the proposed subdivision certified by a registered, licensed surveyor of New Mexico. The plat shall define the subdivision and all roads by reference to permanent monuments. The plat shall also accurately describe each parcel, number each parcel in progression, give its dimensions and the dimensions of all land dedicated for public use or for the use of the owners of parcels fronting or adjacent to the land. Descriptions of parcels by number and plat designation are valid in conveyances and valid for the purpose of taxation.

§ 47–6–8. Requirements prior to sale or lease.

A. It is unlawful to sell or lease land from within a subdivision unless the subdivision plat is approved by the board of county commissioners and on file with the clerk of the county in which the subdivision is located. Where a subdivision lies within more than one county, the subdivision plat must be approved by the board of county commissioners of each county in which the subdivision is located.

.     .     .     .     .

The court found the defendant "sold a 'type-four' subdivision" within the meaning of § 47–6–2(N).

Select Western purportedly raises seven issues suggesting five basic contentions:

(1) Insufficient evidence to establish either defendant's desire to subdivide or any conduct constituting subdivision;

(2) The legislature's failure to enumerate standards for county approval constitutes unlawful delegation of legislative power; and, further, that the Act is an unconstitutional invasion of the right to alienate property, is void for vagueness, and violates due process and equal protection of the law;

(3) The county's failure to adopt approval procedures is a bar to prosecution;

(4) Failure to prove county subdivision regulations bars prosecution for violation of them;

(5) The state and county are estopped to prosecute by reason of waiver, estoppel, laches and unclean hands.

We think the critical issue raised is set out in appellant's first point. In connection with that issue, the additional claim of vagueness because of the construction given to the statute by the county officials and the lower court, i. e., that the period over which the conduct of a land owner may be judged to determine whether or not he is a subdivider may extend "unto death," requires discussion.

At trial it was disclosed that the land was initially purchased by a land development corporation whose president had seventeen years of subdivision experience. Those prior subdivisions in another area of the state had been developed by required platting, filing of plats with the local governments, and registering the operations with various state and national agencies for interstate sales. Lots in those subdivisions were extensively advertised for sale. Defendant's original intention was to subdivide the Gene West Ranch into half-acre and acre parcels for future sales. After several years of indecision, however, and without pursuing any development plans, the ranch eventually was listed with a realtor for sale as one parcel or, if he was unable to sell the entire ranch, for sale in lots of not less than forty acres. The realtor never solicited a sale and never advertised any portion of it for sale. In every case of the alleged violations, he was contacted by prospective purchasers who had learned of the possible availability of undeveloped property by word-of-mouth information from others, and the purchasers selected the property to be conveyed by describing the features of the area they wished to purchase. The State offered no evidence to contradict those facts. Evidence was introduced that defendant sold between twenty-four and forty parcels over a three-year period prior to the time charges were filed.

On March 1, 1976, the Santa Fe county engineer wrote Mr. Kirk, president of defendant company, asking for information regarding the sales so that a determination could be made whether the company was in violation of the Subdivision Act. Kirk responded immediately and had the company's realtor make all requested data available to the county engineer. At a meeting in the realtor's office within a day of the March 1st letter, the sales transactions were examined; the engineer was told that no subdivision was contemplated and thus no subdivision plat had been prepared, and the realtor believed the engineer to be satisfied that defendant was not engaged in a subdivision operation. The engineer admitted that he did not tell anyone associated with the defendant corporation, after his review of defendant's activities, that the sales

made were in violation of the law, and he did not request that a plat be filed.

Later in the year the county engineer again called Kirk and requested another meeting. On November 3rd Kirk and his attorney met in the engineer's office with the county engineer, the county attorney and the county manager. After discussing again the sales made by defendant, the county attorney was instructed to obtain an Attorney General's Opinion regarding the effect of the Subdivision Act on defendant's activities. Such an opinion was never sought nor received, but it is not disputed that Attorney General's Opinions No. 63–154 and No. 64–5, [1963–1964] N.M.Atty. Gen.Rep., Vol. 1, at 362; [1963–1964] N.M. Atty.Gen.Rep., Vol. II at 409, dealing with the interpretation of a similar subdivision law, would have exonerated defendant of any charge of forbidden activity under the evidence produced in this case. On March 31, 1977, criminal complaints for alleged violations of the Act were filed against defendant.

■ It is widely established that enactment of subdivision laws is a proper exercise of the legislature's police power for safeguarding the interest of the public against fraud, financial loss, and injury to public health and safety. See 3 *Yokley, Zoning Law and Practice* (4th ed.) 43, § 17–3, and authorities collected therein. However, since subdivision statutes are enactments in derogation of the common law constituting restrictions upon the free use of property, they are strictly construed against the governmental body attempting to enforce them. *Gulf Oil Corp. of Pa. v. Warminster Township Bd. of Supervisors*, 22 Pa.Cmwlth. 63, 348 A.2d 485 (1975); *Henderson v. Zoning Appeals Bd.*, 328 So.2d 175 (La.App.), *cert. den.* 331 So.2d 474 (La. 1976); *Allen v. Adami*, 39 N.Y.2d 275, 383 N.Y.S.2d 565, 347 N.E.2d 890 (1976); *Groh v. Co. Comm'rs of Washington County*, 245 Md. 441, 226 A.2d 264 (1967); *Yokley, supra*, at 102, § 17–14.

■ Applying the rule of strict construction, as we must, we think there are several grounds on which the convictions in this case must be reversed. To know whether or not one "subdivides" and is thus a "subdivider," it is necessary first to determine that the party charged is one "*creating* a subdivision, or . . . *engaged* in the sale or lease of *subdivided* land which *is being sold or leased* by the owner *in the ordinary course of business.*" Sections 47–6–2(G), –(H), N.M.S.A.1978. A "subdivision" is created if the surface of an area of land "*has been divided* by a subdivider into five or more parcels *for the purpose of sale or lease*," except that "*any land retained* by the subdivider after subdivision which *has not been divided* for a subdivision" is not included in the definition of "subdivision." It is thus apparent at the outset that mere *division* of land is not *sub* division. There must be proof that at some time prior to alienation, there *has been* a division of one parcel into five or more, and that the dividing *was done* so that the smaller parcels could be sold or leased. The legislature obviously intended some significance be attached to the verb tenses used in the statute.

"Creating" a subdivision requires bringing into existence, or causing to be, or producing by some act, five or more new parcels *for sale* from one former area of land. *See* Webster's Third New International Dictionary, where the suffix "-ing" is defined as being "used to form the present participle." The present participle, depending upon the form of the verb "to be" used with it, may denote action still in progress ("the subdivider *is* presently creating a subdivision"); action in progress sometime in the past ("the subdivider *was* creating a subdivision at the time plans were halted"); or action that will be in progress in the future ("the subdivider *will be* creating a subdivision next year"). Because "creating" in § 47–6–2(H) is not used with an auxiliary verb, we assume it was intended to correspond with "engaged in," "subdivided," and "is being sold" which also appear in that subsection. Those additional verbs clearly indicate the aim of the legislation at an ongoing activity of selling already divided land, and that such selling is in the owner's "ordinary course of business."

We are unable to find a shred of evidence that more than one parcel was "divided" at any one time, there always being only one parcel remaining after each sale. Consequently, there is no direct evidence of subdivision, and no support for an inference that a subdivision was desired or was being created or that the landowner's ordinary course of business was that of selling subdivided lots.

Additionally, we look to the basic definition of "subdivision," and note that it too refers to the surface land which "*has been divided* . . . into five or more parcels for the purpose of sale." Section 47–6–2(I). Those words have only one meaning: The owner must manifest by some overt conduct a clear indication that division has already taken place before the parcels are offered for sale.

Even though "subdivision" was defined in the Ohio statutes, as it is in New Mexico, the act of subdividing was judicially interpreted in *McKain v. Toledo City Plan Comm'n*, 26 Ohio App.2d 171, 270 N.E.2d 370, 373 (1971), as follows:

> Subdividing is the taking of an entire tract of land, and dividing it into smaller units designated as lots, sites or parcels— the area or tract so divided into smaller units being known as a subdivision and evidenced by a drawing known as a plat.

The necessity for finding an actual and existing division, in fact, was also recognized in *Adams Tree Service, Inc. v. Transamerica Title Ins. Co.*, 20 Ariz.App. 214, 511 P.2d 658, 662 (1973), where a subdivision, likewise statutorily defined, was said to "consist of a large tract of land divided into smaller lots or parcels." Both cases cited thus refer to division as an accomplished fact.

The evidence in this case is to the contrary. The parcels were split off only when a prospective buyer offered to purchase 40-, 80-, 120-, 180- or 320-acre lots from the remaining whole. Under that evidence it is inescapable that the exception of subsection (1), § 47–6–2(I), must be given effect, and a determination made that even if defendant could be deemed a subdivider, "any land retained by the subdivider . . . which has not been subdivided for a subdivision" is not included in the definition of "subdivision." Certainly after the unplanned and unadvertised sale of each particular parcel, there was retained land which had not been divided, and could not be considered remaining "subdivision" lots. Subsequent sales, therefore, on a sporadic and spontaneous basis, never resulted in division of the remaining tract into five or more parcels at any given time. There simply was no evidence of a predetermined division into the requisite number of parcels at any stage of the various transactions. To agree with the local officials that a landowner would be subject to criminal sanctions as a subdivider if, over the entire period of his lifetime, he sold off five or more smaller portions of his much larger ranch holdings to neighboring ranchers or to persons seeking isolated retreats, requires a reading of the statute much too broad to be permitted. If the governing body so reads this statute, it is indeed as vague as appellant contends, because such an interpretation gives no effect whatever to the exception of retained land from the classification of subdivision lands.

We do not mean to convey an impression that one may circumvent the subdivision laws by failing to file a subdivision plat and by making piece-meal sales from the larger land area. But we do hold that one may not be convicted of violating this statute when the uncontradicted evidence is that no subdivision was intended, no solicitation of sales occurred, no advertising was done, and no predesignated lots were offered for sale. The Attorney General's Opinion No. 63–154, *supra*, answered an almost identical question submitted by the New Mexico Real Estate Commission in 1963, and said:

> By its own terms the . . . Act applies only to land which is divided or proposed to be divided into at least twenty-five parcels for the purpose of sale or lease. Until the developer actually divides or frames a definite proposal to divide the land into at least twenty-five specific parcels, the Act cannot apply.

At the outset we are faced with the situation in which a large land owner desires to sell parcels of his land to anyone offering a good price. He is likely to be willing to sell any size parcel so long as the price is right. Eventually it is possible that he will have sold at least twenty-five parcels from his land without having any intention whatsoever about subdividing and developing the land in accordance with a definite plan. We do not think the Act was intended to apply to an operation of this nature. It could hardly be expected that an individual should comply with the Act before making any sales when he could have no way of determining whether or not his particular operation would result in a division into at least twenty-five parcels. We are of the opinion that the Act was intended to apply to those developers who, for the purpose of sale, pursue a regular plan of dividing a tract into twenty-five specific parcels, or more.

We think this is a proper analysis to apply to the County Subdivision Act as well.

The judgment of convictions and sentences are reversed.

IT IS SO ORDERED.

SUTIN, J., specially concurring.

HERNANDEZ, J., dissenting.

SUTIN, Judge (specially concurring).

I specially concur.

Section 47–6–27(A) reads:

> Any person who sells or leases land that is a part of a subdivision before the plat has been approved and recorded . . is guilty of a misdemeanor . . . .

To find defendant guilty, the State must prove that defendant (1) owned a piece of land; (2) prepared a plat that divided the land into a subdivision; and (3) sold land that was a part of the subdivision platted before the plat had been approved and recorded. If defendant had no duty to prepare a plat, defendant was not guilty.

Section 47–6–3 reads:

> Any person *desiring to subdivide* land shall have a plat of the proposed subdivision certified by a registered, licensed surveyor of New Mexico. . . . [Emphasis added.]

A "proposed subdivision" means that a subdivision was not in existence at the time the plat had to be certified. *Roose v. Parklane Homes Corporation*, 59 Mich.App. 542, 229 N.W.2d 838 (1975).

The evidence is undisputed that defendant had no intention or desire to subdivide the land nor did it in fact subdivide the land. It employed a realtor to dispose of the entire property and if not, sell portions of it so that defendant could get rid of it and get its money back. Defendant had no duty to procure a plat of a proposed subdivision or to comply with the other statutory provisions that relate to the approval and recordation of the plat.

I cannot read § 47–6–3 to mean:

> *Any person who sells portions of his land desires to subdivide* and shall then have a plat of the proposed subdivision certified, etc.

The State procured from defendant a field survey map, not plat, of defendant's property that showed a total acreage of 3400.05 acres. Portions of this map showed the boundaries of land sold, but the map did not show that the units sold were designated as parcels, lots or sites.

. . . Subdividing is the taking of an entire tract of land, and *dividing it into smaller units designated as lots, sites, or parcels,*—the area or tract so divided into smaller units being known as a subdivision *and evidenced by a drawing known as a plat.* [Emphasis added.] *McKain v. Toledo City Plan Commission*, 26 Ohio App.2d 171, 270 N.E.2d 370, 373 (1971).

This passage is quoted by defendant. Nevertheless, the State ignores its meaning and application to the instant case.

The vicarious sale of portions of land not designated on a plat is not the creation of a subdivision of land. Nevertheless, in a host of findings, the trial court found that defendant subdivided the land and sold 40

separate parcels, but no plat for the subdivision was ever submitted for approval. The court did *not* find that defendant "desired" to subdivide the land. There was no subdivision of the land.

The court also found that defendant never sought approval of the subdivision. No provision of the Act covers approval of a subdivision. Section 47–6–8(A) reads:

It is unlawful to sell . . . land from within a subdivision unless the subdivision *plat* is approved by the board of county commissioners . . . . [Emphasis added.]

The fact that defendant did not have a plat prepared is conclusive that it had no desire to subdivide. Absent this desire, defendant had no duty to obtain a plat of a proposed subdivision.

The State has not explained the meaning of "any person desiring to subdivide" nor that of a "proposed subdivision." It takes the position that the vicarious sale of portions of land creates a "subdivision" under its definition.

Section 47–6–2(I) says:

"subdivision" means an area of land within New Mexico, the surface of which has been *divided* by a subdivider into five or more parcels *for the purpose of sale* or lease. . . . [Emphasis added.]

Under this definition, the State had to prove that defendant "divided" his land for the "purpose of sale." It is obvious to me that *before* a subdivision is created, defendant must *divide* his land into parcels for the purpose of sale. These parcels cannot be offered for sale unless they are designated in some manner. The above section does not say that a "subdivision" means an area of land, five or more parcels of which have been sold.

The State takes the position that absent a division of the land, defendant loses the right to alienation of all or portions of the land. It was not the purpose or intention of the Act to restrict an owner of 3400 acres to the creation of a subdivision if sales occurred of five or more parcels. Neither was it the purpose or intention of the legis-

lature to deny the owner of 3400 acres of land the right of alienation of all or portions of the property free of the Act. Constitutional questions would arise—questions that are not necessary to decide in this case. Reason and logic defeat the State's position. It runs contra to the whole purpose of the Act and creates disharmony. We must distinguish between an owner of land who wants to dispose of his property and one who desires to subdivide.

The State declares the Act is designed to protect individual members of the buying public concerning water, title, utilities and other essential facts relating to the use of the land. That is true. But this protection comes after the creation of a subdivision, not before. This kind of protection disappears in the absence of a subdivision.

A host of other interesting questions have been raised in extensive briefs filed by defendant and the State. The main issue having been determined in favor of defendant, further discussion is unnecessary.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

The only one of defendant's seven points of error that merits serious consideration is the first. In my opinion, the remaining six are specious.

It is my opinion that the legislature, by the use of the following language in Section 47–6–8(A), N.M.S.A.1978, intended to impose strict liability for violation of the New Mexico Subdivision Act [Sections 47–5–9, 47–6–1 to 47–6–28, N.M.S.A.1978] so that even an unknowing violation will support a conviction:

It is unlawful to sell or lease land from within a subdivision unless the subdivision plat is approved by the board of county commissioners . . . .

*People v. Mancha,* 39 Cal.App.3d 703, 114 Cal.Rptr. 392 (1974) states:

The power of the Legislature to enact laws to prevent fraud and sharp practices in real estate transactions particularly open to such abuses is beyond question. [Citations omitted.] The state in the ex-

ercise of its police power may regulate the enjoyment of property rights whenever reasonably necessary to the protection of the health, safety, morals or general well-being of the people. [Citation omitted.] "[T]here is no vested right to conduct a business free of reasonable governmental rules and regulations . . . ."

*Fiorella v. City of Birmingham*, 35 Ala. App. 384, 48 So.2d 761 (1950) states:

It is perfectly permissible for a legislative body to make the doing of an act criminal without regard to the intent or knowledge of the doer, and if such legislative intent appears, the courts must give it effect, although the intent of the doer may have been innocent. *Such principle is particularly applicable to enactments passed as police measures.* [Emphasis added.]

In my opinion, the language of the Act is clear and unequivocal, i. e., anyone who divides a given tract of land into five or more parcels and sells them without having a plat approved by the Board of County Commissioners is in violation of the Act and this is precisely what the defendant did.

The interpretation adopted by the majority renders the act meaningless. The canons of construction should not be applied so as to change the obvious and reasonable legislative purpose of the statute.

*State v. Nance*, 77 N.M. 39, 419 P.2d 242 (1966) states:

. . . In endeavoring to arrive at the true construction of statutes which may be of doubtful meaning, courts should be guided by the well-established rules governing such construction. We are committed to an acceptance of the intent of the language employed by the legislature rather than the precise definition of the words themselves. [Citations omitted.] And, in construing a statute, the legislative intent must be given effect by adopting a construction which will not render the statute's application absurd or unreasonable. [Citation omitted.] Not only must the legislative intent be given effect, but the court will not be bound by a literal interpretation of the words if such strict interpretation would defeat the intended object of the legislature. [Citation omitted.]

Courts will not add words except where necessary to make the statute conform to the obvious intent of the legislature, or to prevent its being absurd. [Citation omitted.] But where the language of the legislative act is doubtful or an adherence to the literal use of words would lead to injustice, absurdity or contradiction, the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others. [Citations omitted.]

I would affirm.