McKain et al., Appellants, *v.* Toledo City Plan Commission et al., Appellees.

(No. 6908—Decided May 26, 1971.)

*Mr. Eliot L. Kaplan,* for appellants.
*Mr. Willard A. Johnson,* for appellees.

Brown, J. The appeal on questions of law and fact is dismissed and this cause is retained as an appeal on questions of law. The appeal is from a final judgment of the Common Pleas Court of Lucas Coun-

ty in favor of the defendants, Toledo City Plan Commission, et al., appellees herein, dismissing the petition of plaintiffs, appellants herein, which was filed pursuant to R. C. 711.09. Plaintiffs, in their petition, referred to a certain parcel of realty which they owned, and sought an approval by the Plan Commission of a final plat of a subdivision, and an order directing the Lucas County Recorder to record the plat.

A final judgment of dismissal was entered after a presentation of evidence by both parties and a finding of facts separate from conclusions of law by the Common Pleas Court.

The appeal presents the question of whether or not the plaintiffs, on the evidence presented, are entitled to an approval by the Plan Commission of the plat of the subdivision submitted and an order directing the Lucas County Recorder to record such plat.

The plaintiffs' only tract of land, comprising 3.71 acres on the northerly side of Monroe street in the city of Toledo, has a frontage on Monroe street of 250 feet. This tract has an easterly boundary of 980 feet and a westerly boundary of 842 feet, both extending northerly to Quinton avenue, and a northerly boundary comprising a frontage of 205 feet on Quinton avenue.

Carving out a portion of land from the northerly part of the 3.71 acre tract of realty, plaintiffs had prepared and submitted to the Plan Commission for approval a plat of a subdivision containing three lots with a combined frontage of 205.95 feet on Quinton avenue, which was the entire width of the tract of land (having a uniform depth of 120 feet, extending southerly) owned by the plaintiffs. This plat contained only .59 acres in the proposed subdivision, and at its southeast corner was 863 feet north of Monroe street. The proposed subdivision was described on the plat submitted as Greenbush Knolls Fourth Extension.

After the submission to it of detailed staff reports, and after holding several public hearings, the Plan Commission on or about February 19, 1970 accepted the staff recommendation and disapproved the final plat of the Greenbush Knolls Fourth Extension Subdivision for the

reasons set forth in its decision, and repeated here as follows:

"Action: It was decided that the motion should state: to disapprove the final plat of Greenbush Knolls for failure to comply with the subdivision regulations and particularly these references: Definitions on Pages 4 and 5, Section III, 17), 18), (28) (1) and (2), and on Pages 5 and 6, Section IV-A 1[1]; C 1) and 2). Commr. Fuller seconded the motion. Motion carried."

---

[1]Subdivision Rules & Regulations

Section III, *Definitions*:

(17) *Major Thoroughfare*—An Expressway, Dual Highway, Dominant Major Street, Major Street, Secondary Major Street and/or Main County Road on the Master Plan, which serves, or is intended to serve, as the principal trafficway between areas or districts. (For terms which identify these streets and their required right-of-way widths, see Section IV, C., 2., a, of these regulations.)

(18) *Master Plan*—The comprehensive plan made and adopted by the Plan Commission in compliance with Section 711.09 of the Ohio Revised Code, indicating the general locations recommended for the streets, parks, public buildings, zoning districts and all other public improvements.

(28) *Subdivision*—The division of any parcel of land shown as a unit or as contiguous units on the last preceding tax roll, into two or more parcels, sites, or lots, any one of which is less than five acres, * * *

(2) The improvement of one or more parcels of land for residential, commercial or industrial structures or groups of structures involving the division or allocation of land for the opening, widening or extension of any street or streets, except private streets serving industrial structures;

Section IV, *Principles of Acceptability*

All plats and subdivisions within the corporate limits of the City of Toledo and within three (3) miles of the said corporate limits shall conform to the rules and regulations as contained in this section.

A. *General*

(1) Development shall conform in effect to the Master Plan as adopted. * * *

(4) Variations, exceptions and/or modifications of these rules and regulations may be made by the Plan Commission in specific cases where it is deemed that unusual topographical or other exceptional conditions require such modification or adjustment of these subdivision requirements, provided that such plats are self-contained and do not encroach unfavorably on or interfere with the normal development of abutting properties.

Actually, the sole and basic reason, as reflected by the exhibits admitted in evidence and minutes of the Plan Commission, for the Commission's disapproval of the final plat was that the master plan and official highway map of the city of Toledo, duly adopted by the city, exhibited that Monroe street, on which plaintiffs' 3.71 acre tract fronted, was designated as a dual highway, and the city of Toledo's Subdivisions Rules and Regulations provided (in Section IV, (C) (2) (a) (2)) that right-of-way widths for dual highways was to be 140 feet.

As a result of the foregoing subdivision regulation, requiring subdivision conformity with the 140 foot right-of-way widths for dual highways, the Plan Commission, as exhibited in its minutes, stated it would approve the final plat of the subdivision on condition that plaintiffs would deliver a deed to the city of Toledo for a dedication of a 30 foot strip width along the Monroe street roadway so as to widen it from its present 40 foot width from the center line to a width of 70 feet from the center line in accordance with the official highway plan. This the plaintiffs refused to do, and this was the only reason reflected in the record why the Commission refused to approve the plat. The record evidences that the Commission recognized the plat of the subdivision as being in conformity with the Subdivision Rules and Regulations in every other respect.

The Plan Commission, in making as a condition for approval of the plat the delivery of a deed by plaintiffs to

C. *Streets* .

(1) Streets shall be planned for convenient circulation toward the principal directions of travel, bus routes, schools and playgrounds. The pattern shall be continuous, and yet indirect enough to discourage an excessive amount of through traffic. On the interior design, T-type intersections shall be predominant, while cross-intersections shall be avoided except at major streets. The street patterns shall include some extensions to the boundaries of the development to provide circulation between adjoining neighborhoods.

(2) Street widths shall conform to the following minimums:

(a) *Classifications   Right-of-Way   Width*
* * *
2. Dual Highway   140 feet
* * *

the city of Toledo dedicating a 30-foot strip along Monroe street, stretched the meaning of the word "subdivision"[2] so as to include for purposes of its decision the entire 3.71 acre tract of land owned by plaintiffs rather than the .59 acres carved from the northerly portion of the larger tract. There is no logical basis or judicial precedent for this distortion of the meaning of the word "subdivision."

A subdivision is a smaller part or parcel of land taken from a larger tract of land by reason of a divisional process by the landowner. Subdividing is the taking of an entire tract of land, and dividing it into smaller units designated as lots, sites, or parcels—the area or tract so divided into smaller units being known as a subdivision and evidenced by a drawing known as a plat. *Ferguson* v. *Mathis,* 96 Utah 442, 85 P. 2d 827; *People* v. *Embassy Realty Associates,* 73 Cal. App. 2d 901, 167 P. 2d 797; 42 Ohio Jurisprudence 2d 714, Plats and Maps, Section 3; 83 Corpus Juris Secundum 552, Subdivision; Yokley, Zoning Law and Practice, Volume II, Chapter 12-2, page 26. Accordingly, since plaintiffs' proposed Greenbush Knolls Fourth Extension subdivision was more than 700 feet from the Monroe street right-of-way, Toledo Subdivision Rules and Regulations, section 4 (C) (2) (a) (2), pertaining to the 140 feet minimum right-of-way width for the dual highway master plan for Monroe street, is completely inapplicable and unrelated to plaintiffs' Greenbush Knolls Fourth Extension subdivision and the plat thereof, and the right of plaintiffs to its approval by the Plan Commission.

Within the framework of the United States Consti-

---

[2]R. C. 711.00.1 provides:
* * *
(B) "Subdivision" means:
(1) The division of any parcel of land shown as a unit or as contiguous units on the last preceding tax roll, into two or more parcels, sites, or lots, any one of which is less than five acres * * *.

The term "plat" is also defined in said section as: a map of a tract or parcel of land.
* * *
See footnote 1 pertaining to the definition of "subdivision" in Section III, paragraph 28, subparagraph 1 of the Subdivision Rules and Regulations of the city of Toledo.

tution and the Ohio Constitution, the Legislature has a right to enact laws, and the city of Toledo has a right to enact reasonable rules and regulations governing the acceptance of a subdivision and approval of plats, and those legislative bodies have done so. In a civil action in the Common Pleas Court, pursuant to R. C. 711.09, when the plaintiffs have proved by a preponderance of the evidence that they have complied with the applicable state statutes and city rules and regulations governing subdivisions when drawing up a plat of a subdivision they submitted to the Plan Commission for approval, the Plan Commission has a mandatory duty to approve the plat and permit its recording by the county Recorder. *Boxell* v. *Planning Comm.*, 10 Ohio App. 2d 25. This compliance with applicable statutes and city regulations, the plaintiffs have shown in this case, and, by reason thereof, they are entitled to an approval of their plat by the Plan Commission and a recording of the subdivision plat.

The disapproval of the subdivision plat by the Plan Commission, through its misinterpretation of the subdivision regulations, offends and violates other principles of law as well. A municipality may require in subdivision regulations that a developer provide streets that are necessitated by the activity within the subdivision and such developer may be required to assume any costs which are specifically and uniquely attributed to his activities which would otherwise be cast upon the public, but this does not authorize a municipality to require a developer to dedicate a strip of land to the municipality without payment in order to widen a main thoroughfare 700 feet distant from and totally unrelated to the proposed subdivision. *Pioneer Trust and Savings Bank* v. *Mt. Prospect,* 22 Ill. 2d 375, 176 N. E. 2d 799; *East Neck Estates* v. *Luchsinger* (1969), 61 Misc. 2d 619, 305 N. Y. S. 2d 922; *Associated Home Builders* v. *Walnut Creek* (C. A. Cal. 1970), 90 Cal. Rptr. 663, at pp. 670, 673-4. *Cf. Ayres* v. *City Council of Los Angeles,* 34 Cal. 2d 31, 207 P. 2d 1, 11 A. L. R. 2d. 503 and annotation at page 524, and *Brown* v. *Joliet,* 108 Ill. App. 2d 230, 247 N. E. 2d 47; Yokley, Zoning Laws and Practice, Volume II, Chapters 12-6 and 12-7, pp. 45 *et seq.* If the subdivision re-

quirement is within the statutory grant of power to the municipality and if the burden cast upon the subdivider is specifically and uniquely attributable to his activity, then, the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of constitutional prohibitions, rather than a reasonable regulation under the police power. (*Pioneer Trust and Savings Bank* v. *Mt. Prospect, supra; Corpus Christi* v. *Unitarian Church* (Tex. Civ. App.), 436 S. W. 2d 923; Section 19, Article I, Ohio Constitution.)

Plaintiffs argue that a plat submitted by Marlett Realty, on land adjacent to plaintiffs' larger tract and bounded by Monroe street and Quinton avenue (as is plaintiffs' realty), contained a similar proposed subdivision fronting on Quinton avenue which the Plan Commission approved without demanding as a condition that Marletts dedicate by deed to the city of Toledo a 30 foot strip, or any strip, on Monroe street for highway purposes. Plaintiffs argue that a disapproval of plaintiffs' plat and subdivision, when contrasted with approval of almost an identical subdivision for Marletts, is an arbitrary and discriminatory exercise of authority and, therefore, unlawful. We need not consider this argument in reaching our desicion as explained above. Suffice it to say that the Plan Commission did approve the Marlett Realty subdivision, and an almost identical subdivision has been approved by our decision in this case as explained above. The consistency desirable in the law has thus been attained.

The judgment of the Common Pleas Court dismissing the petition of plaintiffs is reversed with costs to defendants, and taking the action the Common Pleas Court should have taken, judgment is hereby rendered in favor of plaintiffs, thereby granting the prayer of their petition ordering the Plan Commission to approve their subdivision plat for Greenbush Knolls Fourth Extension, and defendant Cullen, as county Recorder of Lucas County, is directed to record such plat when submitted by plaintiffs, after approval by the Plan Commission.

*Judgment reversed,*

POTTER, P. J., and WILEY, J., concur.