R. G. DUNBAR, INC., APPELLANT, *v.* TOLEDO PLAN COMMISSION ET AL., APPELLEES.

(No. L-75-159—Decided February 6, 1976.)

*Messrs. Spengler, Nathanson, Heyman, McCarthy & Durfee* and *Mr. B. Gary McBride,* appellant.
*Mr. John A. DeVictor, Jr.,* for appellees.

POTTER, J. Plaintiff R. G. Dunbar, Inc., the appellant herein, filed an action in the Court of Common Pleas of Lucas County seeking a mandatory injunction enjoining the Toledo Plan Commission and its members, the appellees here, in their official capacity, to approve plaintiff's preliminary drawing of a proposed plat of certain property hereinafter described, and to approve the final subdivision thereof on the basis of its compliance with the zoning ordinance of the city of Toledo and the reasonable subdivision rules and regulations of the commission.

The case was submitted to the lower court upon the complaint and answer; the deposition of William Herr,

executive director of the commission; stipulations of fact, together with exhibits attached thereto jointly filed by the parties; and briefs.

The issue presented to the Court of Common Pleas was whether the defendants could, as a condition of their approval, require the plaintiff, in addition to the dedication of interior residential streets and their coordination with exterior roadways, to dedicate a one hundred foot wide road through its proposed subdivision. The purpose of the additional dedication requested by the defendants was to preserve that land for possible future development of a major thoroughfare projected to traverse the general area of the subject property by a major street plan adopted by the Toledo Regional Area Plan For Action in 1957. That thoroughfare has never been developed and the city of Toledo has no immediate program for its development.

The appellant maintained that the condition superimposed upon the approval of its preliminary drawing and proposed plat was arbitrary, capricious and unreasonable, violative of the Equal Protection and Due Process clauses of the Fourteenth Amendment of the United States Constitution, and of Section 19, Article I, of the Ohio Constitution, and constitutes an attempt to acquire land without due process or just compensation, through an abuse of the police power.

The Court of Common Pleas granted a judgment to the defendants, finding that the Commission's refusal to approve plaintiff's application for a proposed plat because of plaintiff's failure to provide for future public use of a portion of the property, specifically, the 100 foot wide right-of-way proposed in the "Major Street Plan" for the city of Toledo, was not arbitrary, unreasonable or unlawful and was not an unlawful deprivation of private property rights without due process of law.

The trial court found specifically as follows: "The court finds that defendants have not acted improperly in requiring the plaintiff to dedicate a portion of the property involved herein for roadway purposes as a prerequisite for approval of the plat."

To the judgment above referred to, appellants have made the following assignments of error:

"I. The court erred in finding that the condition precedent imposed by defendant-appellees on the approval of plaintiff-appellant's application for preliminary approval of a subdivision plat that plaintiff-appellant dedicate a one hundred (100) feet wide road right-of-way through the proposed subdivision for a major thoroughfare did not constitute an unlawful deprivation of private property rights without due process of law in violate (*sic*) of the Fourteenth Amendment of the Constitution of the United States and a taking of private property without just compensation contrary to Article I, Section 19, of the Constitution of the state of Ohio.

"II. The court erred in determining that the exaction of the dedication of privately owned property for public use without due process or compensation constituted a valid exercise of the police power to regulate the use of privately owned property and that it is presumed valid unless shown to be arbitrary, unreasonable or capricious.

"III. The court erred in finding that the refusal of defendants-appellees to approve the application of plaintiff-appellant for a proposed plat because of its failure to provide for future public use of a portion of the property for a proposed future public use was not arbitrary, unreasonable and capricious.

"IV. The court's finding that the contemplated public use of a portion of plaintiff's property is 'substantially more than a mere prospect for the future' and its finding that constructive notice of the proposed roadway was duly given plaintiff-appellant are against the manifest weight of the evidence.

"V. The court erred in finding that similar prior successful exactions of dedication of other properties for the proposed roadway without objection of the owner thereof clothed the action of defendants-appellees with legal validity and supplanted the need for formal location of the proposed route and notification thereof to the owners of property within it."

Appellant's property consists of a parcel of land located on the south side of Hill Avenue east of Wenz Road in the city of Toledo and comprises approximately 36.05 acres. The property is zoned R-2, single family residential district under the Toledo zoning ordinance requiring a minimum of 6,000 square feet lot area per dwelling and a 50 foot street frontage per lot. The defendant, the Toledo City Plan Commission, is responsible for reviewing requests for planning to insure compliance with the Toledo zoning ordinance and with the reasonable subdivision rules and regulations of the city of Toledo.

On or about December 15, 1972, plaintiff filed an application with the defendant for approval of a subdivision plat for its property to be known as Dunderry Hills. The preliminary drawing of the appellant came on for a presentation to the defendant at its meeting of February 22, 1973. The professional staff of the commission recommended its disapproval for the reason that the proposed plat was inconsistent with future planning in the area. The future planning for this area involved the division of traffic and engineering and the Toledo Regional Plan for Action and in general provided for a north-south corridor between Airport Highway and the Ohio-Michigan state line. The corridor entailed the use of Wenz Road, Richards Road and Talmadge Road. It involved a proposed extension of Richards Road to Wenz Road with a one hundred foot right-of-way. The commission staff recommendation was that any approved development for the parcel in question include a provision for a one hundred foot dedicated right-of-way section so that any eventual north-south extension of Wenz Road and Richards Road could be built without extensive property damage and residential relocation.

At the hearing, a decision was reached to defer the application for an indefinite period not to exceed one year, to permit the city of Toledo to determine whether to purcase the right-of-way, realign the proposed roadway so that it would not traverse the property of plaintiff or abandon that portion of the master plan and thereafter consider the application of the plaintiff on its merits.

The application again came on for a hearing on April

18, 1974. The record is clear that during the one-year period, the city made no decision relative to any of the matters outlined above. The parties in the trial below entered into certain stipulations. Stipulation SF-6 and 7 read:

"The city of Toledo has taken no formal action during the period from the adoption of the 'Major Street Plan' in 1957 through and including the date hereof to acquire the necessary additional road rights-of-way for the proposed roadway south of Central Avenue, except by dedication without compensation.

"At no time from and after the adoption of the said 'Major Street Plan' has the city of Toledo or the village of Ottawa Hills taken any steps to develop the proposed roadway south of Central Avenue including letting of bids for construction and contracts relating thereto."

On April 18th, the matter was continued for an additional period of two weeks and was heard for the third time on May 2, 1974, at which time the application was disapproved. Appellant asserts that the sole reason expressed for the disapproval was the appellant's failure to dedicate a one hundred foot right-of-way through the property requiring a total public dedication for ditch and street right-of-way beyond that normally required in the development of 36 acres.

The appellee asserts that the preliminary drawing of the proposed plan for the subject property did not meet the requirements of the Major Street Plan as it did not provide for the right-of-way for the extension of Richards Road. Appellee asserts that the legal question to be answered by this court is: "Can the defendant in this case refuse to approve a plat that does not conform with the Major Street Plan of the city?" Appellee further maintains that the question of whether or not the city must pay for land when they later construct Richards Road through the property is not a question to be answered in this court at this time and in this case.

Appellee avers that, under R. C. 711.09, the Toledo Plan Commission has authority to approve or disapprove plats in proposed new subdivisions, and a subdivider who desires to go beyond his present rights and to have his land plat-

ted must then comply with all state rules and all city rules regarding the recording of a plat.

The facts present two questions: (1) When can the city require a dedication of street rights-of-way as a condition for plat approval? and (2) when may it refuse to grant approval on the basis that the plat does not conform with the major street plan?

As to the first question, this court made the following observation in *McKain* v. *City Plan Comm.* (1971), 26 Ohio App. 2d 171, as follows:

"If a subdivision regulation of a municipality is within the statutory grant of power to the municipality, and within the framework of the United States and Ohio Constitutions, and if the burden cast upon the subdivider is specifically and uniquely attributable to his activity, then the regulation is permissible; but if the subdivision regulation requires the subdivider to dedicate to the municipality a strip of land more than 700 feet distant from the proposed subdivision, it is forbidden because it amounts to a confiscation of private property in contravention of constitutional prohibitions rather than reasonable regulation under the police power." (Paragraph two of the syllabus.)

The principle has found concurrence in a number of opinions. See for example, *People, ex rel. Exchange National Bank,* v. *City of Lake Forest* (1968), 40 Ill. 2d 281, 285, 239 N. E. 2d. 819, 822, as follows:

"In *Rosen* v. *Village of Downers Grove,* 19 Ill. 2d 448, at p. 453 we stated that the statutory delegation of regulatory power to the village there concerned appeared to be based on the theory that 'the developer of a subdivision may be required to assume those costs which are specifically and uniquely attributable to his activity and which would otherwise be cast upon the public.' But we then cautioned that: 'because the requirement that a plat of subdivision be approved affords an appropriate point of control with respect to costs made necessary by the subdivision, it does not follow that communities may use this point of control to solve all of the problems which they can foresee. The distinction between permissible and forbidden requirements is suggested in *Ayres* v. *The City Council of Los Angeles,*

34 Cal. 2d 31, which indicates that the municipality may require the developer to provide the streets which are required by the activity within the subdivision but cannot require him to provide a major thoroughfare, the need for which stems from the total activity of the community.' 19 Ill. 2d at 453."

See also *Englewood* v. *Bornhorst* (1973), 37 Ohio Misc. 37; annotation, 11 A. L. R. 2d 525, and later case service; cf. *City of Corpus Christi* v. *Unitarian Church of Corpus Christi* ( Tex. Civ. App. 1968), 436 S. W. 2d. 923.

Appellant has testified that with the green space provided  and other streets with the right-of-way as demanded, 32 percent of the subdivision would be taken. There can be no disagreement that the suggested 100 foot right-of-way through appellant's property is not for the benefit of its proposed 36-acre development. If built, it can only be for the benefit of the general public who wish to traverse the area in a north-south direction. Our holding in *McKain, supra,* clearly applies.

Although the plan commission's recommendation and the trial court's entry referred to dedication, appellee apparently now also recognizes that the proposed corridor has no intrinsic value or benefit for the subdivision and that at some future date the city might care to pay for the land.

Appellee suggests in its brief that the judgment below might be supported on the ground that the plat does not conform to the major street plan and, therefore, may be disapproved. This presents the second issue above referred to and a discussion of the right to "freeze" the property in question.

The location of Richards Road, as extended, is little more than ephemeral. The master plan provides that generally Richards Road and Wenz Road should be connected. It does not specifically call for a right-of-way to go through appellant's property. The city was given, in addition to the time from 1957, a fifteen month period to produce its plans. Despite this rather long period of gestation, the city never gave birth to its proposal.

The only clue as to the ultimate location of Richards

Road, extended, is the superimposement of a shaded area on the proposed plat, *ex parte*, by the plan commission. No other official body ascribes to this location or, in fact, to any location. While perhaps two dedications have been secured from other developers, this cannot constitute the making or amendment of the master plan. Two, perhaps, wrongful dedications do not make a right-of-way over appellant's property. It is difficult to see how appellant can make its interior street plan comply with such an uncertain abstract concept. The alternative is to have appellant's land lay fallow. Appellant cannot be denied the beneficial use of its property until the city decides that it may or may not want a portion thereof for its highway in an area not yet determined. This principle was clearly stated in *Henle* v. *City of Euclid* (1954), 97 Ohio App. 258, as follows:

"A city cannot 'freeze' property thereby preventing the owner from improving it so that he may enjoy a beneficial use thereof only because the city may, in the future, need such property in constructing a freeway." (Paragraph three of the syllabus.)

Subsequent opinions have reiterated this principle; see *State, ex rel. Sun Oil Co.,* v. *City of Euclid* (1955), 164 Ohio St. 265; *State, ex rel. Mumma,* v. *Stansberry* (1964), 5 Ohio App. 2d 191. See also R. C. 713.14, which, in pertinent part, reads as follows:

"Sections 713.06 to 713.12, inclusive, of the Revised Code do not authorize a municipal corporation to reserve the use of any private property for future public use for the purpose of extending or widening streets."

For the reasons expressed above and to the extent thereof, we find appellant's assignments of error well taken. The judgment of the Court of Common Pleas of Lucas County is reversed.

*Judgment reversed.*

BROWN, P. J., and WILEY, J., concur.