409 A.2d 1167

GARY D. REIHART, INC., Appellant,

v.

The TOWNSHIP OF CARROLL, York County, Pennsylvania
and the Carroll Township Planning Commission.

Supreme Court of Pennsylvania.

Argued May 24, 1979.

Decided Dec. 21, 1979.

462

Gordon A. Roe, York, for appellant.

Russell F. Griest, Laurence T. Himes, Jr., York, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On July 11, 1974 appellant Gary D. Reihart, Inc. submitted a revised plan for subdividing its 177 acre tract of land to the Carroll Township Planning Commission. The Commission, pursuant to the powers granted by the Legislature in the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, §§ 101 et seq., 53 P.S. §§ 10101 et seq., tentatively approved the plan, but withheld final approval pending appellant's compliance with thirteen conditions. Most pertinent to this litigation was the condition that appellant dedicate portions of its tract along existing roads to Carroll Township so that the Township could increase the width of these roads if necessary. Appellant had the option of fulfilling the condition, or challenging it by procedures specified in the Municipalities Planning Code. Appellant chose not to challenge the condition, and instead dedicated the land to the Township. The Planning Commission then approved appellant's subdivision plan.

Appellant thereafter sought compensation for the land it had dedicated to the Township by filing a petition for appointment of a board of viewers. The petition averred that a de facto taking had occurred which was compensable pursuant to § 502(e) of the Eminent Domain Code. Act of June 22, 1964, Special Sess., P.L. 84, as amended, 26 P.S.

§ 1–502(e) (Supp.1979). The court of common pleas disagreed, and granted the Township's motion for summary judgment:

"[A]n eminent domain proceeding is not available to [Reihart, Inc.]. . . . If the conditions which the Township sought to attack were unreasonable, as [Reihart, Inc.] . . . contends, we believe that its proper course of action was to directly attack the refusal of the Township authorities to approve the plan without such conditions, not to accept the same and then seek damages on the theory of a take."

*Reihart, Inc. v. Township of Carroll*, 91 York 77, 78 (1977) (Blakey, J.). The Commonwealth Court affirmed per curiam without opinion, and this Court granted allocatur.[1]

Appellant now contends that it is entitled to damages under the Eminent Domain Code. We disagree. In our view, this action for damages is not cognizable under the Eminent Domain Code. The Legislature has expressly stated that landowners and other aggrieved persons may seek relief for improper subdivision action exclusively under the Municipalities Planning Code. Accordingly, we affirm the order of the Commonwealth Court.

 Article X of the Municipalities Planning Code, enacted in 1972, sets forth the various modes for challenging municipal decisions. See 53 P.S. §§ 11001–11011. Section 11001 directs that an appeal from a municipality's decision concerning subdivision, or any other subject matter covered by the Municipalities Planning Code, lies only as provided in the Municipalities Planning Code:[2]

1. This case was reassigned to the writer on October 17, 1979 for the purpose of preparing an opinion expressing the views of a majority of this Court.

2. Even before the enactment of Article X of the Municipalities Planning Code, the law of this Commonwealth precluded dissatisfied landowners from suing for damages when a specific statutory remedy was available. In *Jonnet v. Bodick*, 431 Pa. 59, 244 A.2d 751 (1968), a property owner desired to build a motel in an area of the township where such use was prohibited by zoning ordinance. The property owner inquired as to what would be required to obtain

"The proceedings set forth in this article shall constitute the exclusive mode for securing review of any ordinance, decision, determination or order of the governing body of a municipality, its agencies or officers adopted or issued pursuant to this act."

A landowner, such as appellant, who desires relief from a claimed invalid application of a subdivision ordinance, must raise that challenge in accordance with the provisions of section 11006.[3] Appellant's suit is plainly an attempt to

approval of his project, and then applied for a building permit in accordance with the information he had received from the Township Supervisors. When his permit was nonetheless denied by the zoning officer for failure to comply with the zoning ordinance, the property owner brought an action in damages to recover his out-of-pocket expenses and lost profits. This Court refused to "permit an action for damages flowing from the refusal of a building permit, where the plaintiff had a full statutory remedy which he chose to ignore," namely to appeal to the Board of Adjustment, and then, if necessary, to the courts. Id., 431 Pa. at 61, 244 A.2d at 753. See also *Taylor v. Moore*, 303 Pa. 469, 476, 154 A. 799, 801 (1931) ("All questions involved in zoning ordinances, whether they relate to confiscation of property or to the effect of any of the provisions of an ordinance, must be heard and considered under the remedy provided by the Zoning Acts of assembly."); see generally ALI *A Model Land Development Code* 403–04 (1975 Official Draft).

3. Section 11006 provides:
 "(1) A landowner who desires to file a zoning application or to secure review or correction of a decision or order of the governing body or of any officer or agency of the municipality which prohibits or restricts the use or development of land in which he has an interest on the grounds that such decision or order is not authorized by or is contrary to the provisions of an ordinance or map shall proceed as follows:
 (a) From a decision of the governing body or planning agency under a subdivision or land development ordinance the landowner may appeal directly to court or to the zoning hearing board under section 913.1 in cases where that section is applicable. If the municipality provides a procedure, formal or informal, for the submission of preliminary or tentative plans an adverse decision thereon shall, at the landowner's election, be treated as final and appealable.
 (b) From the decision of the governing body or planning agency denying tentative approval of a development plan under section 709(3) or, if tentative approval has been granted, from any adverse decision on an application for final approval, the landowner may appeal directly to court or to the zoning hearing board under section 913.1 in cases where that section is applicable.

secure review under the Eminent Domain Code of the Carroll Township Planning Commission's conditional approval of the subdivision plan. Such a review is expressly prohibited by the Municipalities Planning Code.

The Municipalities Planning Code is the Legislature's mandate for the unified regulation of land use and development. The Code also sets forth procedures by which landowners and others may challenge municipal decisionmaking in this area. These procedures are, in the Legislature's judgment, the best means of balancing the interests of municipalities with those of land owners and others. Commentators view the Municipalities Planning Code's procedures for challenging local land regulations as a significant advance over prior methods.[4] To permit actions for damages in disputes over local subdivision planning, as appellant urges, would surely undermine the Legislature's established procedures for resolution of controversies involving land use and development.

Appellant's efforts to obtain relief on the theory of a de facto taking, pursuant to the Eminent Domain Code, must fail. There is no evidence in the record of a de facto taking. Instead, the record clearly demonstrates that appel-

(c) To the extent that the board has jurisdiction of the same under section 909 all other appeals shall lie exclusively to the zoning hearing board.

(d) Application under sections 912 and 913 shall be made exclusively to the zoning hearing board.

(2) Appeals to the zoning hearing board pursuant to subsections (1)(a) and (1)(c) shall be filed within thirty days after notice of the decision is issued or, if no decision is made, within thirty days from the date when a decision is deemed to have been made under this act.

(3)(a) Appeals to court may be taken by the landowner from any decision of the governing body or planning agency under subsections (1)(a) and (1)(b), after the decision is issued or, if no decision is made when a decision is deemed to have been made under this act.

(b) Appeals to court from any decision of the zoning hearing board may be taken by any party aggrieved."

4. Jan Z. Krasnowiecki, *Zoning Litigation and the New Pennsylvania Procedures,* 120 U.Pa.L.Rev. 1029, 1093 (1972); Lenard L. Wolffe, *Procedure Under the Pennsylvania Municipalities Planning Code,* 14 Duquesne L.Rev. 1, 5–7 (1975).

lant voluntarily submitted a subdivision plan to the Carroll Township Planning Commission, and voluntarily dedicated portions of its land to the Township, in accordance with the Commission's conditional approval.

It is thus clear that appellant failed to properly attack the Commission's decision on its subdivision plan, and then voluntarily complied with that decision. We are therefore satisfied that there is no reason to disturb the order of the Commonwealth Court.

Order affirmed.

MANDERINO, J., did not participate in the decision of this case.

LARSEN, J., filed a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent. The majority opinion is predicated upon the proposition that reading the Municipalities Code in *pari materia* with the Eminent Domain Code shows that the Legislature intended to prohibit appellant's suit under the latter Code. This approach virtually guarantees that the crucial question presented in this, and similar cases, will be ignored. This question is whether there was a *de facto* taking of appellant's property through the device of imposing conditions precedent to subdivision approval. This case should be remanded to the lower court for a determination of this paramount question in light of the facts peculiar to it. If I had sufficient votes for a majority opinion, it would read as follows:

On May 9, 1974, appellant, Reihart, Inc., submitted a sketch plan to the Carroll Township Planning Commission for subdivision approval of four one-acre lots within a 420-acre tract of land. Each lot fronted Ore Bank Road, an existing township road approximately 17 feet wide. The Commission required appellant to subdivide the remaining property within the original tract.

Subsequently, appellant sold about one-half of the original tract and he then submitted a revised plan for a 177-acre

tract of land which showed the same four one-acre lots as well as ten other lots each containing ten acres or more, plus the residue of land not subdivided. On August 8, 1974, the Commission conditionally approved this revised plan. Thirteen conditions, however, were imposed upon appellant before final approval would be granted. One of these conditions required appellant to dedicate portions of the 177-acre tract to the Township for rights-of-way along Ore Bank Road. The purpose of this required condition of dedication was to increase the width of the road from its present 17 feet to a projected 50 feet if this were necessary in the future. It was made clear to appellant that unless these rights-of-way were so dedicated, the Planning Commission would not approve the subdivision plan.

After appellant dedicated the land to the Township as required by the imposed condition, the Planning Commission and then the Carroll Township Board of Supervisors gave final approval of the subdivision in early 1976.

Immediately following final approval, appellant filed a petition for the appointment of viewers pursuant to the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, Art. V, § 502(e), 26 P.S. § 1–502(e),[1] alleging that the Township, without filing a declaration of taking, had effectuated a taking of its property by imposing the condition of dedication which appellant would have to satisfy in order to obtain subdivision approval. Therefore, appellant sought just compensation for this taking.

The Township filed a motion for summary judgment which was subsequently granted. The court stated that "the issue has been before the Court of other jurisdictions and . . . the argument here advanced by [appellant] has been consistently rejected. . . . We conclude that

1. 26 P.S. § 1–502(e) provides:
 (e) If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury.

an eminent domain proceeding is not available to [appellant] who has executed a grant as a condition of subdivision approval."

Appellant then appealed this judgment to the Commonwealth Court which affirmed it per curiam. We granted allocatur on December 10, 1978.

The Township acted pursuant to the Carroll Township Subdivision and Land Development Ordinance of 1970, Section 601.3 which provides:

Where an existing street traverses or abuts the subdivision, the entire right-of-way required by these regulations, or as much as possible within the subdivision, must be provided.

It justified this ordinance by relying upon Section 503 of the Municipalities Planning Code, 53 P.S. § 10503(2)(ii) which allows that a subdivision and land development ordinance may include:

(2) Provisions for insuring that . . . (ii) streets in and bordering a subdivision or land development shall be coordinated, and be of such widths and grades and in such locations as deemed necessary to accommodate prospective traffic, and facilitate fire protection.

The Township denies, therefore, that there was a *de facto* taking of property which would require compensation as the appellant charges.

Succinctly put, the Township views its action as a legitimate exercise of its police power rather than as an exercise of its power of eminent domain.

Drawing a distinction between these two powers—the police and eminent domain—has long been familiar in this jurisdiction. *Philadelphia v. Scott,* 81 Pa. 80, 85–86 (1876). On the one hand, the police power is, among other characteristics, a power to regulate property for the health, safety and general welfare and requires no compensation to the party regulated. *White's Appeal,* 287 Pa. 259, 264, 134 A.

409 (1926). On the other hand, eminent domain is a power to take property for the public use and for which compensation is necessary. *White's Appeal, supra.* While the distinction between the police power and power of eminent domain is one of long-standing ancestry, nonetheless the problem of testing the limits of a condition imposing a required dedication constitutes a matter of first impression for this Court. Accordingly, a test is required for ascertaining whether the condition imposed has its locus in the police power or whether it derives from the power of eminent domain instead.[2]

Appellant suggests that such a test has been articulated in *McKain v. Toledo City Plan Commission,* 26 Ohio App.2d 171, 270 N.E.2d 370 (1971); he urges this Court to adopt it as a useful means for testing the limits of a given dedication requirement imposed by a municipality upon a subdivider. In *McKain,* plaintiffs were seeking to subdivide three lots totaling .59 acres. Subdivision approval was conditioned upon plaintiffs' dedication of a thirty-foot wide strip along a dual highway which abutted 3.71 acres of plaintiffs' land. The strip was to make possible a widening of the highway from its present forty-foot width to a finished width of seventy feet. Just as in the instant case, so too in *McKain,* the court sought a way to test the limits of a condition which imposed a required dedication. That court stated:

> A municipality may require in subdivision regulations that a developer provide streets that are necessitated by the activity within the subdivision and such developer may be required to assume any costs which are specifically and uniquely attributed to his activities which would otherwise be cast upon the public, but this does not authorize a municipality to require a developer to dedicate a strip of land to the municipality without payment in order to

---

2. For example, in *Ayres v. City Council of City of Los Angeles,* 34 Cal.2d 31, 207 P.2d 1 (1949), it was suggested that the municipality may require the developer to provide streets which are required by the activity *within* the subdivision, but it cannot require him to provide a main thoroughfare, the need for which stems from the activity of the total community at large.

widen a main thoroughfare 700 feet distant from and totally unrelated to the proposed subdivision. (Citations omitted). If the subdivision requirement is within the statutory grant of power to the municipality and if the burden cast upon the subdivider is specifically and uniquely attributable to his activity, then, the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of constitutional prohibitions, rather than a reasonable regulation under the police power. (Citations omitted). *Id.* at 176–77, 270 N.E.2d at 374.

Applying this "specifically and uniquely attributable test" will reveal whether an imposed condition seeks to accommodate needs created only by the subdivision itself or instead satisfies needs of the general public.

While other jurisdictions confronted by this issue have formulated similar tests,[3] the "specifically and uniquely attributable test" offers the fullest and most empirically satisfying test for striking a balance between the interests of the larger community and the rights of property owners upon whom is cast an appropriate burden when the activity of subdivision has generated the need. Such a test, I think, will place a reasonable restriction upon the discretion of planning boards in what has been a very ambiguous area of decision making. Also, this test will facilitate planning both by landowners and developers as well. And finally, the specifically and uniquely attributable test will assist courts in assessing the validity of conditions which are imposed as conditions precedent to subdivision approval.

In the instant case, appellant was required to dedicate rights-of-way along the entire 177-acre tract of land which abutted Ore Bank Road. Appellant's proposed subdivision

---

**3.** *See Wald Corp. v. Metropolitan Dade County*, Fla.App., 338 So.2d 863 (1976) (rational nexus standard); *Noland v. St. Louis County*, 478 S.W.2d 363 (1972) (reasonably related standard); *Pioneer Trust and Savings Bank v. Village of Mt. Prospect*, 22 Ill.2d 375, 176 N.E.2d 799 (1961) (specifically and uniquely attributable); *Ayres v. City Council of Los Angeles, supra.*

plan showed only four one-acre lots to be used as single family residential dwellings. The remainder of the tract, which the Township required appellant to subdivide also, was divided into ten ten-acre lots to be used for agricultural purposes and residue land. Guided by the test articulated above, the lower court must determine whether the burden imposed upon appellant is specifically and uniquely attributable to the activity of the subdivision. If it is, then appellant should receive no compensation since the imposed condition is a proper exercise of the police power. If it is not, then appellant is entitled to just compensation for a taking which has deprived him of the beneficial use and enjoyment of his property.

The Township contended and the lower court agreed that there could be no taking in that appellant voluntarily dedicated the land in order to obtain final approval for his subdivision plan.[4] This contention is without merit. One cannot be required to give up property when the giving up bears no relationship to the police power and thus is tantamount to the compelled surrender of one's legal right to compensation in return for subdivision approval.

Since a material issue was presented to the lower court, i. e., police power vs. eminent domain, the entry of a summary judgment was improper. Therefore, I would reverse the judgment and remand this case to the Court of Common Pleas for a determination of the issues consistent with the above.

4. There are three cases in Pennsylvania concerning compulsory dedication; all of them are contrary to the trial court's reasoning and ruling in the instant case. *Boron Oil Co. v. Zoning Bd. of Adj. of Hickory Township,* 52 Pa.D.&C.2d 267 (C.P. Mercer Co., 1971) (ordinance requirement conditioning building permit upon developer's dedication of parallel access road held unconstitutional under Pennsylvania and U.S. Constitutions); *Lukens v. Upper Moreland Twp.,* 82 Pa.D.&C. 308 (Q.S. Montgomery Co., 1952) (held that Twp. could not constitutionally acquire sewer easement by making dedication of that easement a condition to approval of subdivision plan); *In re Lower Moreland Twp. Ordinance,* 81 Pa.D.&C. 387 (Q.S. Montgomery Co., 1951) (dictum suggesting that compulsory dedication is a compensable "taking").