Joseph J. Balent and George Barto, Appellants *v.* City of Wilkes-Barre, Appellee.

Argued December 10, 1984, before Judges Rogers and Colins and Senior Judge Kalish, sitting as a panel of three.

*Mark A. Ciavarella, Jr., Lowery, Ciavarella & Rogers,* for appellants.

*Carl N. Frank,* for appellee.

OPINION BY JUDGE COLINS, May 31, 1985:

Joseph Balent and George Barto (Appellants), appeal from the order of the Court of Common Pleas of Luzerne County, dismissing their Petition for the Appointment of a Board of Viewers.

Appellants were the owners of a building which was seriously damaged by fire and was demolished by the City of Wilkes-Barre (City) approximately twenty months after the fire. They contend that the demolition constituted a *de facto* taking and petitioned for a Board of Viewers to be appointed in order to assess damages. The Court sustained the preliminary objections of the City and dismissed the petition, finding that the City's demolition of the building was an exercise of the police power and, therefore, non-compensable, rather than an exercise of eminent domain.

The fire occurred on March 9, 1980, and the City notified Appellants on March 10, 1980 that they were to enclose the property and make whatever repairs were necessary to bring the building up to the Building Code standards by April 9, 1980. The letter also advised appellants that non-compliance could result in a fine or imprisonment, and that the order was appealable within ten days. The building was enclosed but other violations were not corrected. No appeal was filed and more than twenty months after the fire, the City had the building demolished.

After the demolition, appellants petitioned for the appointment of a Board of Viewers to determine the amount of compensation, and such was appointed in the Court of Common Pleas of Luzerne County. The City filed preliminary objections, alleging, in part, that the City was validly exercising its police power, not its power of eminent domain and thus the City was not required to compensate appellants. The lower court sustained the preliminary objection and the appellants bring this appeal, claiming that the demolition was an exercise of the City's power of eminent domain, not the police power, and that they should be compensated.

The power of eminent domain is distinguishable from the police power. The difference was clearly delineated in *Redevelopment Authority of Oil City v. Woodring*, 498 Pa. 180, 186, 445 A.2d 724, 727 (1982), where our Supreme Court declared that:

> Police power involves the regulation of property to promote health, safety and general welfare and its exercise requires no compensation to the property owner, even if there is an actual taking or destruction of property, while eminent domain is the power to take property for public use, and compensation must be given

for property taken, injured or destroyed. White's Appeal, 287 Pa. 259, 264, 134 A. 409 (1926).

This Court has also distinguished eminent domain from police power in *Northeast Outdoor Advertising, Inc. Appeal*, 69 Pa. Commonwealth Ct. 609, 612, 452 A.2d 83, 85 (1982) stating that:

Police power should not be confused with that of eminent domain. Police power controls the use of property by the owner, for the public good, its use otherwise being harmful, while eminent domain and taxation take property for public use. Under eminent domain, compensation is given for property taken, injured or destroyed, while under the police power no payment is made for a diminution in use, even though it amounts to an actual taking or destruction of property. . . .

No matter how seemingly complete our scheme of private ownership may be under our system of government, all property is held in subordination of the right of its reasonable regulation by the government clearly necessary to preserve the health, safety, or morals of the people. Obedience to such regulation is not taking property without due process; that clause does not qualify the police power. (Quoting Reilly v. Department of Environmental Resources, 37 Pa. Commonwealth Ct. 608, 611, 391 A.2d 56, 58 (1978)).

President Judge Bowman, in discussing the extent of this police power, noted that:

[O]ur courts have consistently held an otherwise valid exercise of the police power does not effectuate a constitutional taking of property

for public use even though (a) its exercise re-
sulted in the entire suppression of the business
. . .; (b) or at whatever cost to the party intro-
ducing the danger being proscribed . . .; and
(c) even when it forces the offending industry
out of business. . . . (Citations omitted.)

*Commonwealth v. Barnes & Tucker Co.*, 23 Pa. Com-
monwealth Ct. 496, 510, 353 A.2d 471, 479 (1976), *aff'd,*
472 Pa. 115, 371 A.2d 461 (1977), *appeal dismissed,* 434
U.S. 807 (1977).

The City's representative testified that the struc-
ture was removed because it had become dangerous to
the public. No repairs had been made since the fire,
and vandalism, rotting wood and wind damage had
made the corner property a hazard. The boarding on
the windows had been removed and the neighbors had
complained about the condition of the building. This
does not constitute a compensable taking because the
City did not appropriate the property for public use.
The property was demolished under the City's police
power[1] and not under its power of eminent domain
and no compensation is required.

The decision of the Court of Common Pleas of
Luzerne County is affirmed.

---

[1] The City's Chief Building Inspector ordered the demolition
under the emergency provision of Ordinance No. 32 of the Wilkes-
Barre Code, Wilkes-Barre, Pa., Code §7-23, Ord. No. 32-76, §1 (1976),
which provides as follows:

*Emergency Work.* In case there shall be, in the opinion
of the building inspector's office, actual immediate danger
of failure or collapse of a building or any part thereof so
as to endanger life or property, the building inspector's
office shall cause the necessary work to be done to render
said building or structure or part thereof, temporarily safe,
whether the procedure prescribed in this section has been
instituted or not.

ORDER

AND Now, May 31, 1985, the order of the Court of Common Pleas of Luzerne County, No. 82-2167-C, dated August 2, 1983, is affirmed.

Judge WILLIAMS, JR. did not participate in the decision in this case.

---

DISSENTING OPINION BY SENIOR JUDGE KALISH:

Joseph J. Balent and George Barto, Appellants, appeal from the order of the Court of Common Pleas of Luzerne County dismissing their petition for the appointment of board of viewers. A building owned by the Appellants was damaged by fire and subsequently was demolished by the City of Wilkes-Barre (City).

Appellants contend that this demolition constituted a de facto taking and filed a petition for the appointment of viewers to assess damages. The City filed preliminary objections. Pursuant to the procedure in eminent domain cases, the trial court considered depositions, briefs and argument to determine whether in fact there was a taking compensable in damages.

The court sustained the preliminary objections and dismissed the petition, concluding that the action of the City in abating the nuisance by demolishing the building constituted a noncompensable exercise of the police power and was not one of compensable eminent domain.

The court did find that the building was structurally unstable and constituted a health and safety hazard and that, after notice from the inspector, Appellants boarded the building but did not make repairs; nor was there an appeal to the Board of Appeals pursuant to an appeal notice.

A local ordinance provides that whenever any building shall have been declared dangerous or unsafe

by the building inspector's office, the building shall, unless made safe, be demolished. Wilkes-Barre, Pa., Code §7-23, Ord. No. 32-76, §1 (1976). While the Appellants have no quarrel with the ordinance permitting abatement of the nuisance, they contend that the City's action in demolition was an excessive, arbitrary and unreasonable use of the police power constituting a taking, compensable under the Fifth Amendment to the United States Constitution. U.S. CONST. amend. V.

Where a governmental agency, by some regulation in the exercise of its police powers or otherwise, engages in conduct which infringes on the beneficial use of a person's property resulting in a substantial diminution of its value, it triggers at once a constitutional question—the Fifth Amendment of the United States Constitution forbidding private property to be taken without just compensation and/or the Fourteenth Amendment forbidding a state to deprive a person of life, liberty or property without due process of law.

Although as to the property owner there is no qualitative difference in a Fifth Amendment context between an eminent domain taking and one by the exercise of the police power, the trial court articulated the conceptual difference and concluded that since this was an exercise of the police power it was noncompensable.

Indeed, in land use cases such as zoning and environmental regulations, and in de facto condemnation cases, our courts have recognized a need to preserve some degree of flexibility in planning and the tremendous financial burden and expense imposed on regulators.

Thus, in Pennsylvania, while the mere recording of redevelopment plans, plus negotiations, plus the

purchase of other properties in the area may be insufficient to constitute a de facto taking, yet where it is accomplished by facts showing that the plaintiff cannot use his property or stands to lose his property or loses tenants to such an extent that the property no longer generates sufficient income to pay taxes, he is then deprived of his property and is entitled to Fifth Amendment compensation damages. *Conroy-Prugh Glass Co. v. Department of Transportation,* 456 Pa. 384, 321 A.2d 598 (1974).

Our courts have consistently held that an otherwise valid exercise of the police power does not effectuate a Fifth Amendment taking even though its exercise resulted in the entire suppression of the business or even forces the party out of business. *Commonwealth v. Emmers,* 221 Pa. 298, 70 A. 762 (1908) ; *Bortz Coal Co. v. Air Pollution Commission,* 2 Pa. Commonwealth Ct. 441, 279 A.2d 388 (1971).

In *Reilly v. Department of Environmental Resources,* 37 Pa. Commonwealth Ct. 608, 391 A.2d 56 (1978), a rezoning prohibited a tract of land from being developed for residential use. The court held that a zoning ordinance was an exercise of the police power and not the exercise of the power of eminent domain; that in this instance, it did not substantially interfere with the beneficial use of the property and therefore was a legitimate exercise of the police power and that even if the exercise of the power was excessive, the sole remedy was in the relief provided for in the zoning laws to invalidate such an ordinance and not an eminent domain proceeding.

In *Gary D. Reihart, Inc. v. Township of Carroll,* 487 Pa. 461, 409 A.2d 1167 (1979), a local land planning device required a landowner to dedicate some land to the township as a condition precedent to the township's approval to the landowner's subdivision

plans. The landowner claimed this device amounted to de facto taking even though he had voluntarily dedicated the land. He asked for the appointment of a board of view under 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-502(e). Our Supreme Court held this was not a claim cognizable under the Eminent Domain Code and that the exclusive remedy for all questions involving the validity of zoning ordinances must be heard and considered under the remedy provided for in the appropriate zoning laws.

However, as early as *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393 (1922), Justice HOLMES rejected the proposition that police power restrictions could never be recognized as a "taking" requiring compensation under the Fifth Amendment. He indicated that the determination of a taking is a question of degree and therefore cannot be defined by mere general propositions.

Two recent United States Supreme Court cases have cast doubt on decisions which limit the owner's remedy only to having the offending statute declared illegal. They seem to point in the direction that once the owner is deprived of the beneficial use of his property by a governmental entity, it would be unconstitutional to deny him compensation.

In *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104 (1978), *reh. denied,* 439 U.S. 883 (1978), the question presented was whether the City of New York, in order to preserve historic landmarks and sites, may place restrictions on the development of individual historic landmarks, specifically the Penn Central Terminal site in Manhattan, without effecting a "taking" of the owner's property within the meaning of the Fifth Amendment and thus requiring the payment of just compensation. The Court, in review-

ing the factors that have shaped the jurisprudence of the Fifth Amendment "takings", recognized the difficulty in formulating a fixed standard, stating that each case is decided on an ad hoc factual inquiry. But what is significant is that the Court, in its review, which included within it zoning cases, made no distinction between eminent domain "takings" and excessive use of the police power in regulatory cases. It followed the lead of Justice HOLMES in the *Pennsylvania Coal Co. v. Mahon,* and stated, "it is of course implicit . . . that a use restriction on real property may constitute a 'taking' if not reasonably necessary to effectuate a substantial public purpose." *Penn Central Transportation Co.,* 438 U.S. at 127. The economic impact, the interference with investment backed expectations, the character of the governmental taking such as a physical invasion rather than an interference arising from some public program are all relevant factors. The Court hastened to say that "we do not embrace the proposition that a 'taking' can never occur unless the government has transferred physical control over a portion of the parcel." *Id.* at 122 n. 25.

The Court then went on to consider "whether the interference with appellants' property is of such a magnitude that *'there must be an exercise of eminent domain and compensation to sustain [it]' '',* id. at 136 (quoting *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413 (1922)). (Emphasis added.) It proceeded to make a careful assessment of the impact of the regulation on the terminal site and concluded that the Landmarks Preservation Law has not effected a "taking" and that the restrictions were substantially related to the promotions of the general welfare and permitted the owner reasonable beneficial use of his property.

This was followed by *San Diego Gas and Electric Co. v. City of San Diego,* 450 U.S. 621 (1981). This was a rezoning case wherein the city reduced the acreage for industrial use and established an open space plan that included appellant's property. Appellant sought damages for inverse condemnation. The California court of appeals held that an owner deprived of the beneficial use of his land by a zoning ordinance is not entitled to damages for inverse condemnation and that his only remedy is invalidation of the regulations on the basis of *Agins v. City of Tiburon,* 447 U.S. 255 (1980). The California Supreme Court denied review. In a five to four decision, the United States Supreme Court held that there was no final judgment and hence, it lacked jurisdiction since the trial court left open some factual questions concerning damages. However, the dissent written by Justice BRENNAN, who wrote the majority opinion in *Penn Central Transportation Co.,* felt there was a final judgment and proceeded to address the merits of the questions involved. Justice REHNQUIST, who voted with the majority, indicated that if he were satisfied that the appeal had been from a final judgment, he would have little difficulty in agreeing with much of what was said in the dissenting opinion. Thus, it appears that the dissent really represented the view of the majority.

The dissent said there is no essential difference between regulatory taking and other takings. *San Diego Gas and Electric Co.,* 450 U.S. at 651-53. Police power regulations such as *zoning ordinances* and *other land-use restrictions* can destroy the use and enjoyment of property in order to promote the general welfare as effectively as a formal condemnation or physical invasion of the property. When that happens, the Constitution requires that the government entity

pay just compensation. *Once there is a taking, the Fifth Amendment is triggered and compensation must be awarded and mere invalidation of the law would fall far short of fulfilling the fundamental purpose of just compensation.* For the period of time that the law is in effect, the owner is entitled to compensation. It serves to place the owner in the same position monetarily as he would have been if the property had not been taken. Whether it be a temporary or a permanent taking, he is entitled to damages for this regulatory taking. The vindication of the owner's rights should not depend on freedom of land-use planning or the expense involved to the regulator. *Hamilton Bank v. Williamson County Regional Planning Commission,* 729 F.2d 402 (6th Cir. 1984), *cert. granted,* U.S. , 105 S.Ct. 80, 83, L.Ed. 2d 28 (1984).

In *Commonwealth v. Barnes & Tucker Co.,* 23 Pa. Commonwealth Ct. 496, 353 A.2d 471 (1976), this Court said that while a proper exercise of the police power by an enactment does not *ipso facto* constitute a taking, regardless of its economic impact upon the property of the person affected, yet its reasonableness and means of enforcement should be scrutinized to determine its necessity in accomplishing its objectives.

Thus, if it should be determined that there was an excessive arbitrary or abusive use of this regulatory power, depriving the owner substantially of the beneficial use of his property, it would appear that recent United States Supreme Court cases indicate that due process requires Fifth Amendment constitutional damages.

The trial court's ruling that the petitioner did not exhaust his administrative remedies misconceives the nature of the petitioner's action. The essential nature of his claim against the governmental unit is to recover just compensation for a taking of his property,

a right guaranteed by the Constitution and not resting on whether he exhausted his administrative remedies. It is for the Court to determine whether there has been a violation of the Fifth or Fourteenth Amendments. The constitutional aspects of that issue embrace not only a taking, but a taking on payment of just compensation. Exclusive jurisdiction for a determination in all condemnation proceedings is vested in the Common Pleas Court. Section 401 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-401. A condemnee is defined as "owner of a property interest taken, injured, or destroyed. . . ." Section 201(2) of the Eminent Domain Code, 26 P.S. §1-201(2). If there has been a compensable injury suffered and no declaration of taking has been filed, a condemnee may file a petition for the appointment of viewers. Section 502(e) of the Eminent Domain Code, 26 P.S. §1-502(e).

Thus, the administrative review procedure is not an appropriate or applicable remedy.[1] *Borough of Greentree v. Board of Property Assessment, Appeals and Review*, 459 Pa. 268, 328 A.2d 819 (1974) (plurality decision). In *Borough of Greenteee*, our Supreme Court held that a statutory remedy was inadequate where a challenge was made, not to the mechanics of a tax calculation, but to the power of the legislature to levy any tax. The reason was that the determination of the constitutionality of the enabling legislation was not a function of the administrative agency. "Where the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision,

---

[1] Regulatory taking not considered in a Fifth Amendment context plus failure to exhaust remedies was the basis for *Gans v. City of Philadelphia*, 43 Pa. Commonwealth Ct. 635, 403 A.2d 168 (1979).

exhaustion should not be required.'' *Id.* at 279, 328 A.2d at 824 (quoting L. Jaffe, *Judicial Control of Administrative Action* 440 (1965)). *See also Beverly Bank v. Board of Review,* 117 Ill. App. 3d 656, 453 N.E. 2d 96 (1983); *People ex rel. Boylan v. Illinois Central Gulf Railroad,* 72 Ill. 2d 387, 381 N.E. 2d 276 (1978); *People ex rel. Cain v. Illinois Central Railroad,* 33 Ill. 2d 232, 210 N.E. 2d 516 (1965).

Thus, this case should be remanded to the trial court for proceedings consistent with this opinion.