711 P.2d 607

**AMFAC DISTRIBUTION CORPORATION, a California corporation, dba Amfac Electric Supply Company, Plaintiff-Appellant,**

v.

**UNION ROCK & MATERIALS CORPORATION, an Arizona corporation, Defendant-Appellee.**

**No. 1 CA–CIV 7374.**

Court of Appeals of Arizona, Division 1, Department A.

July 9, 1985.

Motion for Reconsideration Denied Dec. 19, 1985.

NAME _____

Law Firm of T.J. Tweeton by Timothy J. Tweeton, Phoenix, for plaintiff-appellant.

Wentworth & Lundin by David McCord, Stephen W. Myers and William J. Reckling III, Phoenix, for defendant-appellee.

## OPINION

JACOBSON, Chief Judge.

The issue on this appeal is whether a satisfaction of a bond posted to discharge materialmen's liens discharges debts incurred, not only by the general contractor who posted the bond, but also debts of the owner of the property.

Union Rock & Materials Corporation [Union Rock] contracted with Defco Construction Company [Defco] for the construction of a maintenance facility on its property in Phoenix, Arizona. Defco subcontracted with SWL Electric Corporation [SWL] for a portion of the work on the project. Amfac Distribution Corporation [Amfac] furnished materials to SWL for use in the Union Rock construction project. On July 6, 1981, Amfac sent Union Rock

the "preliminary twenty-day notice" pursuant to A.R.S. § 33–992.01 that is required prior to the recording of a mechanic's lien. Accompanying the notice was a letter asking Union Rock to notify Amfac if the notice was incorrect in any manner. SWL failed to pay a balance owing to Amfac for materials supplied for the Union Rock project in the amount of $45,818.98. Amfac filed a timely mechanic's lien on the property pursuant to A.R.S. § 33–993.

On May 7, 1982, Amfac filed suit to foreclose its lien, naming Union Rock, Defco, and SWL as defendants. The complaint contained a second count against Union Rock for unjust enrichment. On May 20, 1982, a statutory discharge of lien bond was recorded pursuant to A.R.S. § 33–1004 in the amount of one and a half times the amount of Amfac's lien, naming Defco as principal, United Pacific Insurance Company as surety, and Amfac as claimant. Amfac amended its complaint to add Union Pacific Insurance Company as a defendant pursuant to A.R.S. § 33–1004(C).

Around the time that the bond discharging the lien was recorded, Amfac learned that the materials it had supplied to SWL were utilized not only in connection with the construction of the maintenance facility for which Defco was the general contractor, but also that $11,531.83 of the materials it had supplied to SWL had been used by SWL in the performance of another portion of the Union Rock construction project, namely installation of a service entry section to the maintenance facility, for which SWL had been the general contractor and Defco was not involved. Amfac entered into a settlement with Defco regarding payment for the materials Amfac had supplied to SWL that had been used in fulfilling SWL's subcontract with Defco. A stipulation and order dismissing Defco was entered. Amfac continued with its

suit to foreclose on Union Rock's property for the $11,531.83 in materials supplied to SWL under the contract SWL had entered into directly with Union Rock.

Union Rock sought summary judgment on the grounds that the statutory discharge of lien bond when recorded had discharged the full amount of Amfac's lien on Union Rock's property. Amfac responded and filed a cross-motion for summary judgment for the $11,531.83 for materials it supplied under Union Rock's contract with SWL. Amfac argued that the statutory discharge bond applied only to the amount of materials supplied by Amfac to SWL in the performance of its obligation under the subcontract with Defco. The trial court entered its formal order granting Union Rock's motion for summary judgment and denying the motion of Amfac from which Amfac appeals.[1]

In support of the trial court's ruling, Union Rock argues that Defco's statutory release of lien bond filed pursuant to A.R.S. § 33–1004 which purported to release Amfac's lien in its entirety did as a matter of law release the entire lien. Union Rock points out that subsection (A) of the statute provides in mandatory terms that "[u]pon the recordation of such bond, the property shall be discharged of such lien ...." As Union Rock points out, the obvious policy of the statute is to give property owners the ability to free their property from liens. It gives the owner the ability to pass on to the contractor the responsibility for unpaid materialmen by withholding final payment until the contractor provides a lien discharge bond to the owner. Union Rock argues that Amfac's contention that a portion of its lien claim still exists despite the recordation of a full lien discharge bond undermines the policy of the statute.

---

1. We note that Union Rock's motion for summary judgment had not only addressed the lien claim, but also sought dismissal of the claim against Union Rock for unjust enrichment, arguing that no personal judgment could be obtained against Union Rock since Amfac had not been in privity of contract with Union Rock.

Since Amfac did not address this argument in either the trial court or on appeal, there is nothing for us to consider in regard to it. We concern ourselves only with whether the trial court properly ruled that the lien was discharged in its entirety.

Union Rock suggests that Amfac would have had a remedy in this situation by pursuing its suit against Defco for the full amount of the lien that was discharged. It also contends that since Defco provided a bond in an amount to discharge the entire lien, Amfac would have been entitled to collect the full amount from Defco or its surety. This does not legally follow. The mere fact that Defco supplied a bond for the full amount of the lien, without more, did not mean that Defco agreed to be liable for the full amount of the lien. The bond in this case specifically provided that Defco disputed the correctness or validity of the claim, but that it was filing the bond to shift any responsibility which might exist away from the property owner. Moreover, the liability of the surety is ordinarily measured by the liability of the principal and therefore the surety is not liable if the principal is not. 74 Am.Jur.2d, *Suretyship* § 25 at 28 (1974); *Phelps v. Dawson*, 97 F.2d 339 (8th Cir.1938). A surety may raise any defense which would be available to its principal. *Spear v. Industrial Commission*, 114 Ariz. 601, 562 P.2d 1099 (App.1977). If a company agrees to be surety for a particular principal, the contract is understood to be only for that named principal. *Western Surety Company v. Horrall*, 111 Ariz. 486, 533 P.2d 543 (1975). We must decide, therefore, where the loss should be borne as between the landowner, Union Rock, who apparently has already paid the contract price to its contractor, SWL, and the materialman, Amfac, who did not receive payment from the contractor.

It is easy to see that the problem presented in this case would not have existed if Amfac had filed two separate liens, one for the materials it supplied to SWL in its contract with Defco and one for the materials it supplied in SWL's contract with Union Rock. Union Rock would have then known that it needed to obtain a statutory release of lien bond not only from Defco but also from SWL to release the lien for the materials Amfac had supplied for the SWL/Union Rock contract. Amfac contends, however, that it was unaware

and had no reason to inquire as to whether it was supplying materials to SWL under two separate contracts relating to the Union Rock construction project or merely one contract. It therefore filed a single lien for all of the materials it had supplied to SWL for the Union Rock construction project. Amfac asks this court to hold that under these circumstances its lien was effective even though the single lien it filed related to two contracts and that Defco could discharge the lien pursuant to A.R.S. § 33–1004 only to the extent that the lien related to the contract between it and Union Rock and could not discharge the portion of the lien relating to the contract between SWL and Union Rock.

In reviewing the evidence presented to the trial court on the cross-motions for summary judgment, we find deposition testimony of an Amfac employee that Amfac did not learn that it was supplying materials to SWL under two separate contracts regarding the construction on Union Rock's property until it was too late to file a separate lien for the materials supplied under SWL's contract with Union Rock. Union Rock did not point to any factors suggesting it would be unreasonable for Amfac to think it was supplying materials under only one contract. It appears that the work under the two contracts were closely related and involved construction of different parts of the same building. Therefore, it was undisputed for purposes of ruling on the cross-motions for summary judgment that Amfac thought it was supplying materials to SWL under only one contract relating to the Union Rock construction project. Union Rock, on the other hand, was in a position to know that SWL was involved in the project in two capacities, as a subcontractor in the construction of the maintenance facility and as a general contractor in the construction of the service entry section. Amfac's lien stated only that it had supplied materials to SWL for the Union Rock project without relating the materials to any particular contract involved in the project. Under these circumstances, Union Rock is charged with

knowledge that SWL had failed to pay Amfac for materials supplied to the entire job. Union Rock could have protected itself and its property by having its contractors determine under which contract the materials were supplied and by withholding final payment to both contractors, Defco and SWL, until both had supplied appropriate lien release bonds pursuant to A.R.S. § 33–1004. We, therefore, conclude where two innocent parties must suffer, the burden should fall on the party which is best able to protect itself and thus avoid the loss. *General Motors Acceptance Corp. v. Hill*, 95 Ariz. 347, 390 P.2d 843 (1964). This result should prevail unless Amfac, at its peril, was required to file separate liens.

We find no case involving a similar fact situation. The question of whether separate liens for separate contracts are necessary often arises, however, in the context of whether a lien is timely under the statutory provisions requiring the lien to be filed within a certain time period after completion of the work. For example, in *Gene McVety, Inc. v. Don Grady Homes, Inc.*, 119 Ariz. 482, 581 P.2d 1132 (1978), the materialman had not known he was supplying materials under two separate contracts between the owner and contractor in a construction project. The single lien the materialman filed for the materials supplied was timely as to one of the contracts, but not the other. The Arizona Supreme Court acknowledged the rule that two or more contracts cannot be tacked together so as to extend the time within which a lien notice must be filed. The court went on to find that the rule has no application under circumstances where the materialman furnishes materials to a party under a continuing arrangement and has no knowledge that the materials are being used in more than one contract:

> Where the materialman does not know of the existence of more than one contract and he furnishes materials to the contractor under a continuing arrangement, his single lien claim for materials furnished will be timely as to all items of material if furnished within the statutory period after the furnishing of the last

item, notwithstanding that at the time of filing of the lien notice more than the statutory time had elapsed since the completion of the work called for by one of the contracts. *Gem State Lumber Co. v. School District*, 44 Idaho 359, 256 P. 949 (1927); *Anderson v. Taylor*, 55 Wash.2d 215, 347 P.2d 536 (1959). In *Anderson v. Taylor* the court said:

> "Where the lien claimant is not a party to either of the contracts in question, as where he is furnishing material or labor to a contractor who has two or more contracts with an owner, or to a subcontractor who has two or more subcontracts in connection with the same project, the rule is not applicable unless the lien claimant was aware of the fact that there were two or more contracts."

119 Ariz. at 485, 581 P.2d at 1135. Other courts which have been presented with the same question concerning the timeliness of a lien relating to two contracts have generally based their conclusion on whether the materialman was aware or unaware that the materials were being used for more than one contract. *See e.g.*, 53 Am.Jur.2d *Mechanics' Liens* § 200 at 719 (1970); Annot., 175 A.L.R. 330 at 334–338 (1948). Similarly, we believe that whether a materialman should be required to file separate liens for separate contracts relating to the same construction projects so that the owner will know to whom to look to furnish one or more bonds for releasing the lien depends in large part on whether the materialman knows or should know that more than one contract exists.

■ Under proper circumstances, portions of a lien are severable. In *Adams Tree Service, Inc. v. Transamerica Title Insurance Company*, 20 Ariz.App. 214, 511 P.2d 658 (1973), Division Two of this court held that a valid portion of a lien could be severed from an invalid portion. In this case we find that the portion of the lien attributable to the Defco contract is severable from the portion attributable to the SWL contract. There was no evidence that Defco intended to answer for materials supplied under a contract with which it

had no involvement. We hold that the recordation of a bond for release of a lien pursuant to A.R.S. § 33–1004 does not discharge the entire lien in such circumstances as was presented here where the contractor discharging the lien had no legal obligation to pay a portion of the claim, but, where another contractor did. Under the circumstances of this case, the bond filed by Defco discharged only the portion of the lien attributable to its contract, severing from it the portion of the lien in the amount of $11,531.83 attributable to the SWL/Union Rock contract, and leaving that portion of the lien intact.

We note that there is no explanation in the record concerning the circumstances under which Defco provided the bond that it did. We make no attempt to determine whether Union Rock would ultimately succeed in shifting liability to Defco, depending on what transpired between them before the bond was obtained.

We reverse the trial court's granting of summary judgment to Union Rock and remand to the trial court for entry of summary judgment for Amfac foreclosing its lien for $11,531.83 against Union Rock property.

BROOKS, P.J., and GREER, J., concur.